**Jeanne F. Loftis**, OSB #913612
E-mail:    jeanne.loftis@bullivant.com
**Alexander H. Hill**, OSB #135515
E-mail:    alexander.hill@bullivant.com
BULLIVANT HOUSER BAILEY PC
One SW Columbia Street, Suite 800
Portland, Oregon  97258
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANGELA SCHULTZ,<br><br>                Plaintiff,<br><br>   v.<br><br>NW PERMANENTE P.C., an Oregon limited liability company and abn NW PERMANENTE PHYSICIANS & SURGEONS P.C.,<br><br>                Defendants. | Civil No.: 3:20-cv-00626-IM<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. SUMMARY OF FACTS ............................................................................................ 1

III. POINTS AND AUTHORITIES ............................................................................... 9

    A. SUMMARY JUDGMENT STANDARD ............................................................ 9

        1. Counts 1, 2, and 9 - Disability Discrimination and Failure to
           Accommodate under ORS 659A.112 and 42 U.S.C. § 2601, *et seq.* ......... 10

        2. Count 3 - Retaliation for Invoking Disability-Related Rights Under
           ORS 659A.109 ................................................................................................ 20

    B. Counts 4, 5, and 10 – FMLA and OFLA Denial, Interference, and
    Retaliation ................................................................................................................ 22

        1. Claims Related to Leave Interference and Denial ..................................... 22

        2. Retaliation Claims Under FMLA and OFLA ............................................. 25

    C. Counts 6 and 7 – Claims Related to Sick Leave Denial/Interference and
    Retaliation/Discrimination ..................................................................................... 28

    D. Count 8 – Wrongful Discharge .......................................................................... 29

IV. CONCLUSION ........................................................................................................ 30

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF CONTENTS**
**Page i**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ana Lidia Orozco, v. Lamb Weston, Inc.*,
  No. 2:19-CV-00060-SU, 2020 WL 1957910 (D. Or. Apr. 23, 2020) ............................. 18

*Arnold v. Pfizer, Inc.*,
  970 F. Supp. 2d 1106 (D. Or. 2013) ............................................................................. 27

*Austin v. Wal-Mart Stores, Inc.*,
  No. CIV. 07-1306-HA, 2008 WL 4936480 (D. Or. Nov. 14, 2008) ............................. 24

*Bachelder v. Am. W. Airlines, Inc.*,
  259 F.3d 1112 (9th Cir. 2001) ..................................................................................... 30

*Bachelder v. Am. W. Airlines, Inc.*,
  259 F.3d 112 (9th Cir. 2001) ....................................................................................... 30

*Balint v. Carson City, Nev.*,
  180 F.3d 1047 (9th Cir. 1999) ..................................................................................... 17

*Borough v. D.G. Averill Trucking*,
  151 Or. App. 723, 951 P.2d 202 (1997) ...................................................................... 36

*Carter v. Fred Meyer Jewelers, Inc.*,
  No. 3:16-CV-00883-YY, 2019 WL 2744190 (D. Or. Apr. 10, 2019) ..................... 24, 35

*Cripe v. City of San Jose*,
  261 F.3d 877 (9th Cir. 2001) ....................................................................................... 18

*Dark v. Curry Cty.*,
  451 F.3d 1078 (9th Cir. 2006) ..................................................................................... 18

*Davis v. Tri-County Metro. Transp. Dist.*,
  45 F. Supp. 3d 1222 (D. Or. 2014) .............................................................................. 18

*Faragher v. City of Boca Raton*,
  524 U.S. 775, 118 S. Ct. 2275 (1998) ......................................................................... 24

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
  391 U.S. 253 (1968) ..................................................................................................... 17

*Fuller v. City of Oakland, Cal.*,
  47 F.3d 1522 (9th Cir. 1995), *as amended* (Apr. 24, 1995) ....................................... 25

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page i**

*Garity v. APWU Nat'l Labor Org.*,
    655 F. App'x 523 (9th Cir. 2016) .......................................................................24

*Henderson v. Jantzen, Inc.*,
    79 Or. App. 654, 719 P.2d 1322 (1986) ..........................................................17

*Herbert v. Altimeter, Inc.*,
    230 Or. App. 715, 218 P.3d 542 (2009) ..........................................................27

*Huitt v. Optum Health Servs.*,
    216 F. Supp. 3d 1179, 1188 (D. Or. 2016) .....................................................18

*Humphrey v. Mem'l Hosps. Ass'n*,
    239 F.3d 1128 (9th Cir. 2001) ..........................................................................19

*Kachur v. NAV-LVH, LLC*,
    817 F. App'x 359 (9th Cir. 2020) ...............................................................19, 21

*Larson v. United Nat. Foods W. Inc.*,
    518 F. App'x 589 (9th Cir. 2013) .....................................................................22

*Law v. Kinross Gold U.S.A., Inc.*,
    651 F. App'x 645 (9th Cir. 2016) .....................................................................29

*Morgan v. Hilti*,
    108 F.3d 1319 (10th Cir. 1997) ........................................................................33

*Price v. Multnomah Cty.*,
    132 F. Supp. 2d 1290 (D. Or. 2001) ................................................................33

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) ............................................................................29

*Schmidt v. Safeway Inc.*,
    864 F. Supp. 991 (D. Or. 1994) .......................................................................21

*Shaver v. Indep. Stave Co.*,
    350 F.3d 716 (8th Cir. 2003) ............................................................................24

*Snead v. Metro. Prop. & Cas. Ins. Co.*,
    237 F.3d 1080 (9th Cir. 2001) ..........................................................................17

*Thorson v. State ex rel. Dep't of Justice*,
    171 Or. App. 704, 15 P.3d 1005 (2000) ..........................................................36

*Washington v. Fort James Operating Company*,
    110 F. Supp. 2d 1325 (D. Or. 2000) ................................................................33

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page ii**

*Webb v. Intel Corp.*,
    No. 3:17-CV-01089-SI, 2018 WL 1547354 (D. Or. Mar. 29, 2018)................................29

**STATUTES**

29 U.S.C. § 2512(a)(1)(D) ................................................................................29

29 U.S.C. § 2601, *et seq.* ...........................................................................16, 17

29 U.S.C. §2615(a)(2)........................................................................................33

42 U.S.C. § 12111 *et seq.* ................................................................................16

42 U.S.C. §12112(10)........................................................................................22

42 U.S.C. § 12112(a) ........................................................................................18

42 U.S.C. § 12112(b)(5)(A)..............................................................................22

ADA.................................................................................................. passim

Americans with Disabilities Act ......................................................................18

Family Medical Leave Act ...............................................................................19

federal Family Medical Leave Act ...................................................................29

FMLA ................................................................................................ passim

FMLA (3)............................................................................................................29

FMLA (4)............................................................................................................29

NWP under the Family Medical Leave Act .......................................................9

OFLA ................................................................................................. passim

Oregon Family Leave Act..............................................................................9, 29

Oregon Rehabilitation Act...........................................................................18, 27

Oregon Sick Leave Act................................................................................12, 35

ORS 653.606.......................................................................................................36

ORS 653.606(1)(a)........................................................................................35, 36

ORS 653.606(1)(c)..............................................................................................36

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page iii**

ORS 653.641(1) .................................................................................................16

ORS 653.641(1) and (2) ......................................................................................35

ORS 653.641(2) .................................................................................................16

ORS 659.449 ......................................................................................................17

ORS 659A.103 ...................................................................................................27

ORS 659A.109 .............................................................................................16, 27

ORS 659A.109's .................................................................................................27

ORS 659A.112 ..............................................................................16, 17, 18, 27

ORS 659A.112(1) ...............................................................................................18

ORS 659A.112(2)(e) ..........................................................................................27

ORS 659A.183(1) ...............................................................................................16

ORS 659A.183(2) ...............................................................................................16

ORS 659A.186(2) ...............................................................................................29

OSLA .................................................................................16, 35, 36, 38

**OTHER AUTHORITIES**

29 C.F.R. 825.200 ..............................................................................................30

29 C.F.R. Part 1630, App. ..................................................................................19

29 C.F.R. § 825.200 ...........................................................................................30

29 C.F.R. §825.200(b)(4) ...................................................................................29

Fed. R. Civ. P. 56(c) ..........................................................................................17

LR 7-1 ..............................................................................................................8, 9

OAR 839-006-0245 ............................................................................................22

OAR 839-007-0007 ............................................................................................36

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**TABLE OF AUTHORITIES**
**Page iv**

## LR 7-1 CERTIFICATION

In compliance with LR 7-1, the parties certify they have made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.

## MOTION

Defendant NW Permanente PC, individually, and on behalf of incorrectly named NW Permanente Physicians & Surgeons P.C. (collectively "NWP"), asks the Court to enter summary judgment in its favor as to all of Plaintiff Angela Schultz's ("Plaintiff") ten employment-related claims against it because there is no question of fact that NWP did not discriminate, retaliate, or otherwise unlawfully conduct itself with Plaintiff's employment and separation from employment.

In support of this Motion, NWP relies upon the pleadings filed in this matter, the following points and authorities, and the Declarations of Alexander H. Hill and Tammy Kilmer with supporting documents attached thereto.

## I. INTRODUCTION

This is an employment dispute wherein Plaintiff alleges ten separate but related claims against her former employer, NWP. Generally, Plaintiff alleges discrimination, failure to accommodate, and retaliation related to her mental health. NWP denies Plaintiff's claims and any wrongdoing, and further asserts that its conduct was based on non-discriminatory, legitimate business needs to avoid any undue hardship.

## II. SUMMARY OF FACTS

Plaintiff was hired with NWP as a Medical Education Program Coordinator ("Program Coordinator") on or about May 21, 2018. Dkt. 31 (Undisputed Facts) at ¶ 2. During her employment as a Program Coordinator, Plaintiff was supervised by Lucy

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 1**

Andersen.  *Id.* at ¶ 3.  During her tenure within that same department, April Rice also became

Medical Education Lead.  *Id.*

In June 2019, Plaintiff notified Ms. Andersen that she had a disability and needed

mental health treatment.  Dkt. 31 (Undisputed Facts) at ¶ 5.  On or about June 18, 2019,

Plaintiff submitted a request to NWP under the Family Medical Leave Act ("FMLA") for

foot surgery.  *Id.* at ¶ 6.  Her request for medical leave also fell under the Oregon Family

Leave Act ("OFLA").  *Id.*  She estimated to be out from July 17, 2019 through August 17,

2019.  *Id.* Her request was approved by NWP and she took the leave beginning July 17,

2019.  *Id.*at ¶¶ 7-8.

At about the same time, on or about June 24, 2019, Plaintiff submitted a second

request to NWP for intermittent leave under FMLA and OFLA related to a diagnosis of

major depression.  Dkt. 31 (Undisputed Facts) at ¶ 7.  She estimated her leave would be up to

twice a week for four hours per episode.  *Id.*  This leave was also approved by NWP.  *Id.*

Although Plaintiff alleges that she was subjected to heightened criticism in July 2019,

she also testified that she was not asked to do anything that was not already part of her

normal job expectations.  Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 37:23-25 ("Q…The tasks that

they were giving to you, were they beyond what your job duties were?  A.  No.  But it wasn't

within a reasonable time frame."); 38:22-25 ("Q. Did either Lucy or April, either - - either of

them, tell you directly that they were mad that you were putting in for FMLA?  A.  No.");

39:1-4 ("Q. Did either of them tell you that it was going to be a problem or a burden or they

had to do extra work or complain or anything like that?  A.  No.").

Plaintiff was released to return to work from her foot surgery on or about

September 9, 2019.  Dkt. 31 (Undisputed Facts) at ¶ 9-10.  The last working day prior to her

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 2**

return to work, Ms. Andersen e-mailed Plaintiff that welcomed her back to work and provided a list of tasks and deadlines for Plaintiff to complete. *Id.* ¶ 10.

On or about October 15, 2019, Ms. Andersen met with Plaintiff to review her work performance. Dkt. 31 (Undisputed Facts) at ¶ 11. Ms. Andersen told Plaintiff she was not meeting work expectations and cautioned that if Plaintiff did not improve the concerns could be escalated. *Id.*

On November 26, 2019, Plaintiff was given a Work Development Plan ("WDP"). Dkt. 31 (Undisputed Facts) at ¶ 12. Shortly thereafter, in early December 2019, Plaintiff requested medical leave from December 14, 2019 through January 21, 2020 to attend an intensive outpatient program. *Id.* at ¶ 13.

After receiving the WDP and requesting leave, Plaintiff was able to take leave without any issues:

> Q.      And how was your -- your mental health at this point, in September, October, November?
>
> A.      It definitely wasn't good. It was starting to go downhill.
>
> Q.      Were you still on intermittent FMLA leave? Were you able to still take that one day a week or whatever the intermittent was?
>
> A.      I believe so, but I'm not sure, because I think I had mentioned prior that I think you have to fill out the FMLA every so often. So if it was for three months, maybe it would have been a time that I would have had to renew it, but I can't, honestly, remember.
>
> Q.      Okay. But you don't remember being prevented from taking it, do you?
>
> A.      No.

///

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 3**

Q.     Okay.  It wasn't the case where you said, 'I need to take this as part of my intermittent leave' and Lucy said, 'No.  We can't do that?'

A.     None that I can remember.

Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 53:15-54:8.

The WDP was put in place to support Plaintiff, to hold her to the same accountability as her coworkers, and was not intended to stress her out:

…I just knew that I had a responsibility to hold her to the same accountability as all of my coordinators in getting her work done.  I felt like if she understood that **this was a supportive measure to help her**, you know, have a clear sense of what the expectations are, that it would help motivate her to do - - to realize this work is important, we can't be stalling out.   I don't know.  If it stressed her, you know, it wasn't my intent.

Hill Decl. ¶ 3 Ex. 2 (Andersen Dep.) at 50:12-51:6 (emphasis added).

The expectations set forth in her work lists and even in her WDP were no more than her normal job description.  Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 37:23-25 ("Q…The tasks that they were giving to you, were they beyond what your job duties were?  A.  No.  But it wasn't within a reasonable time frame."); 38:22-25 ("Q. Did either Lucy or April, either - - either of them, tell you directly that they were mad that you were putting in for FMLA?  A. No."); 39:1-4 ("Q. Did either of them tell you that it was going to be a problem or a burden or they had to do extra work or complain or anything like that?  A.  No.").  Plaintiff's only complaint about the task lists were that the deadlines were unrealistic:

Q.     So you come back, and you get this email with all these expectations. Were you able to meet those expectations?

A.     I don't believe I was able to meet the expectations only because they were -- they were giving me -- they were very specific with me, giving me deadlines on when things needed to

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 4**

be done, when other people in my department weren't given those same deadlines.

Q.      So if I'm understanding correctly: You're saying that your coworkers -- other program coordinators did not have the same expectations as you did as far as deadlines?

A.      Everyone had deadlines in the department, but they -- they weren't strict with my other coworkers.

Q.      Okay.

A.      At least I didn't -- I don't think so.

Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 45:6-19.

NWP informed Plaintiff that she would be exhausting her protected leave balance available to her under FMLA and OFLA as of December 31, 2019. Dkt. 31 (Undisputed Facts) at ¶ 14. Plaintiff also exhausted her available sick time protected under the Oregon Sick Leave Act ("OSLA") as of December 10, 2019, so much so that she had a negative sick time balance of 36 hours. Hill Decl. ¶ 4 Ex. 3 (December 10, 2019 letter to Plaintiff) (stating, in part, "[a]s of your last paycheck, your available sick balance is **6 hours** and your available vacation balance is negative 36 hours"). However, NWP granted Plaintiff a personal leave through January 21, 2020, as requested to complete her outpatient program. Dkt. 31 (Undisputed Facts) at ¶ 14. On January 21, 2020, Plaintiff's doctor completed a medical form that was provided to NWP. *Id.* ¶ 15. Plaintiff's doctor stated that Plaintiff was unable to perform the essential functions of her job and recommended Plaintiff take an additional month off. *Id.* The form asked that Plaintiff return to work on February 21, 2020. *Id.*

Plaintiff also testified that she was unable to perform the essential functions of her job. Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 64:15-17. When asked what her expected

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 5**

treatment would be over the proposed extension, Plaintiff testified, "…still seeing my psychiatrist, and she was working with me to - - how to cope with daily life and situations...[a]nd I - - I can't remember, but I think she may have upped my Effexor at the time as well.  So maybe that would have helped…"  *Id.*  Ex. 1 (Schultz Dep.) at 64:23-65:7.

In the meantime, Plaintiff's department was strained, and Ms. Andersen believed the situation was not sustainable:

> At this point operationally you're very much suffering as a department, and my enlisting Christy's help was to try to figure out and navigate this unsustainable situation with the repeated leaves and how it was impacting our department.  And it was time to make, I guess - - it was a frustrating time for me because we had rally worked very hard to move forward with helping Angela.  And the repeated leaves were causing stress on the department, as I indicated before, the workload, and I was seeing no end in sight.  And while she did return to work, there was not - - there was - - she had barely worked over the course of those several - - several weeks, and it wasn't sustainable for us at that busy time.

Hill Decl. ¶ 3 Ex. 2 (Andersen Dep.) at 78:8-21.

Ms. Andersen testified that the beginning of the year was particularly busy, and that the department "needed all hands on deck…"  *Id.* Ex. 2 (Andersen Dep.) at 78:22-79:6.  Nonetheless, NWP "afford[ed] [Plaintiff] with all considerations that we're required to."  *Id.* at 79:7-12.  NWP was unable to temporarily hire anyone to cover Plaintiff's position because "[t]he nature of the work wouldn't have - - we wouldn't have benefitted from having someone cover for that time."  *Id.* Ex. 2 (Andersen Dep.) at 88:12-23.

The ultimate decision as to whether the department could sustain Plaintiff's leave request fell on Ms. Andersen who, after considering all options, determined the leave was not sustainable for the department.  *Id.* Ex. 2 (Andersen Dep.) at 81:23-82:9.  Ms. Andersen

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 6**

especially considered that she "had no way of knowing" when Plaintiff would return to work. *Id.* Ex. 2 (Andersen Dep.) at 84:11-85:3.

On or about January 29, 2020, NWP told Plaintiff it was denying her request for additional leave. Dkt. 31 (Undisputed Facts) at ¶ 16. NWP asked Plaintiff to either return to work by February 3, 2020, or NWP would separate her employment effective February 3, 2020. *Id.* Plaintiff did not return to work, and her employment was separated as of February 3, 2020. *Id.*

In response to the proposed termination, Plaintiff asserted, for the first time, that she was harassed by Ms. Andersen and Ms. Rice, but prior to that, Plaintiff never reported any type of harassment or bullying to anyone at NWP. Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 52:2-5 ("Q. Okay. How about the harassment from Lucy Andersen and April Rice? Did you ever report that to anybody at Northwest Permanente? A. No."). Although Plaintiff also testified that she did not report the alleged harassment because she was worried about losing her job (*see*, *Id.* Ex. 1 (Schultz Dep.) at 52:6-11), she was already worried about losing her job anyway because of her poor performance. *Id.* Ex. 1 (Schultz Dep.) at 56:5-15.

Plaintiff testified that she believed the harassment was because Ms. Andersen was inconsiderate:

> Well, the time that -- when I had my foot surgery and, you know, I wanted to come back to work sooner, but I was only able to telecommute because I couldn't walk, couldn't lift, couldn't bend, couldn't drive. And I remember Lucy telling me that I could go ahead and purchase, like, a scooter -- type of scooter where I could be able to go into work. But I still wasn't able to drive.

///

///

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 7**

So it just -- when she was saying things like that, it was just -- **I felt it was inconsiderate, because, you know, that's if I had money to buy a scooter, you know, to be able to get to work.** I felt that she was accommodating to everyone else but myself.

Hill Decl. ¶ 2 Ex. 1 (Schultz Dep.) at 62:7-19 (emphasis added).

Plaintiff testified that Rice was "nitpicking" and "critiquing":

> Q.    Okay. And what was April doing about that same time, September, October, that was harassing?
>
> A.    **She was nitpicking me**. You know, she was going into my emails. When I came back -- I had files in my email. She deleted some of my files. She deleted some of my emails that were helpful to me. And then when I was supposed to do something and I couldn't find something in an email, you know, I felt -- I felt that she was sabotaging my work.
>
> **And -- and she was critiquing the way I was sending emails**. But then, you know, when I, you know, did send an email that was good, you know, she said, 'You sent' -- that email that I sent was good. And then the next thing I know, I'm getting an email from Lucy Anderson that I was in trouble for the way I sent the email.

*Id.* Ex. 1 (Schultz Dep.) at 47:6-20 (emphasis added).

Finally, Plaintiff also testified that Rice was "condescending":

> Q.    And what do you mean by 'ridicule?'
>
> A.    Just the way she made me - - the way she made me feel and just - - she was just very **condescending** towards me, and how she talked to me, I just felt belittled…

*Id.* Ex. 1 (Schultz Dep.) at 77:21-24 (emphasis added).

Plaintiff's medical records stop at February 14, 2020, at which point Plaintiff submitted a request to engage in group therapy. Hill Decl. ¶ 5 Ex. 4 (Schultz_00661).

According to the records produced, Plaintiff did not seek treatment again until June 2020.

Hill Decl. ¶ 6 Ex. 5 (Schultz_00667).

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 8**

Unfortunately, because of COVID-19 pandemic, and with only limited exceptions, a hiring freeze was put in place for NWP shortly after Plaintiff's employment was separated. Hill Decl. ¶ 7 Ex. 6 (Daniels Dep.) at 78:8-13; ¶ 8 Ex. 7 (Larsen Dep.) at 50:6-15. Although NWP submitted to replace Plaintiff as early as February 5, 2020, because of the hiring freeze, a replacement for Plaintiff was not hired until October 2020. *Id.*¶ 7 Ex. 6 (Daniels Dep.) at 73:20-25; 75:2-7; *Id.* ¶ 9 Ex. 8 (Rice Dep.) at 14:17-20.

NWP calculates its leave years for FMLA and OFLA on the rolling twelve-month basis and has not adopted the calendar-year method. Kilmer Decl. ¶ 2. As to sick time available under OSLA, NWP does not use the "front-load" method for sick time but requires its employees to work before sick leave begins accruing. *Id.* ¶ 3.

### III. POINTS AND AUTHORITIES

Plaintiff asserts ten express claims against NWP: (1) disability discrimination under ORS 659A.112; (2) failure to accommodate a disability under ORS 659A.112; (3) retaliation for invoking disability-related rights under ORS 659A.109; (4) OFLA leave denial under ORS 659A.183(1); (5) OFLA leave retaliation under ORS 659A.183(2); (6) sick leave denial/interference under ORS 653.641(1); (7) sick leave retaliation/discrimination under ORS 653.641(2); (8) common law wrongful discharge; (9) ADA disability/perceived disability discrimination under 42 U.S.C. § 12111 *et seq.*; and (10) FMLA leave denial/interference/retaliation under 29 U.S.C. § 2601, *et seq.*

NWP asks for summary judgment in its favor as to all of these claims.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 9**

law." Fed. R. Civ. P. 56(c). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Id*. at 248, 106 S.Ct. 2505.

The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev*., 180 F.3d 1047, 1054 (9th Cir. 1999). After the moving party satisfies the initial burden, the nonmoving party must establish the existence of a genuine issue of material fact and must do so by making an adequate showing as to each element of the claim for which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmoving party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288–89, 88 (1968).

1.     **Counts 1, 2, and 9 - Disability Discrimination and Failure to Accommodate under ORS 659A.112 and 42 U.S.C. § 2601, *et seq.***

Oregon and federal law use the same standards to evaluate claims for discrimination and failure to accommodate in connection with an alleged disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) ("[t]he standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law.") (citing *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 719 P.2d 1322 (1986); *former* ORS 659.449).

///

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 10**

### (a)     Discrimination and Failure to Accommodate Claims

Under both the Americans with Disabilities Act ("ADA") and the Oregon Rehabilitation Act, employers are prohibited from discriminated against employees on the basis of disability in hiring, advancement, compensation, or other terms and conditions of employment. *Ana Lidia Orozco, v. Lamb Weston, Inc.*, No. 2:19-CV-00060-SU, 2020 WL 1957910 (D. Or. Apr. 23, 2020) (citing 42 U.S.C. § 12112(a) and ORS 659A.112(1)).

In order to establish a *prima facie* case of discrimination under ORS 659A.112, Plaintiff must show "(1) that she is 'disabled' within the meaning of the ADA; (2) she is a 'qualified individual' as defined by the ADA; and (3) she suffered an adverse employment action on the basis of her disability." *Id.*, 2020 WL 1957910, at *4 (citing *Davis v. Tri-County Metro. Transp. Dist.*, 45 F. Supp. 3d 1222 (D. Or. 2014)).

An employee is considered a "qualified individual" when the employee is "able to perform the essential functions of the position at the time of her termination *without* accommodation, and then, if she cannot, whether she was able to do so *with* reasonable accommodation." *Id.*, 237 F.3d at *5 (emphasis in original) (quoting *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1188 (D. Or. 2016)).

### (i)     No reasonable accommodations were requested

Reasonable accommodations "are mechanisms to remove barriers and provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001). If a medical leave, even if unprotected and/or unpaid, can result in treatment that helps the employee to once again perform the essential functions of their job once the leave is complete, that leave could be a reasonable accommodation. *See*, *Dark v. Curry Cty.*, 451

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 11**

F.3d 1078, 1090 (9th Cir. 2006) (noting that "[e]ven an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer."); *see also*, 29 C.F.R. Part 1630, App. (stating in part that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment…").

Although "the ADA 'does not require an employee to show that a leave of absence is *certain or even likely to be successful* to prove that it is a reasonable accommodation,'" the employee "'only needs to satisfy the minimal requirement that a leave of absence could *plausibly* have enabled [him] adequately to perform [his] job.'" *Kachur v. NAV-LVH, LLC*, 817 F. App'x 359, 361 (9th Cir. 2020) (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001)) (emphasis in original).

In *Kachur*, the plaintiff was on leave for knee surgery and took longer than expected to recover. 817 F. App'x 359. However, the plaintiff kept his employer abreast of his recovery "on a monthly basis after he exhausted his Family Medical Leave Act leave." *Id.*, 817 App'x at 361. Further, the plaintiff's physician also kept the employer informed about the recovery process. *Id.* The *Kachur* Court held that, although no date-certain was provided for the plaintiff's return to work, the updates provided by the plaintiff and his physician served as estimates for when he plausibly could return to work, and therefore there were questions of fact which precluded summary judgment. *Id.*

Here, it is undisputed that Plaintiff was on an unprotected leave when she asked for an approximate four-week extension through February 21, 2021. It is also undisputed that, at the point when she requested the extension of unprotected leave, she could not perform the essential functions of her job at NWP. Ex X. (Schultz Dep.) at 64:15-17. Her own medical

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 12**

doctor confirmed this with the extension paperwork too. No accommodation was recommended to help Plaintiff perform the essential functions of her job – the only accommodation request was more time away from work.

Unlike her prior unprotected leave wherein Plaintiff specified out-patient treatment that she believed would help her perform the essential functions of her job once completed, this last request did not include any other specific treatment and merely asked for "more time" to be away from work. In fact, there was no specific treatment that Plaintiff was seeking.

Plaintiff herself testified that her expected treatment was the same as before – "…still seeing my psychiatrist, and she was working with me to - - how to cope with daily life and situations...[a]nd I - - I can't remember, but I think she may have upped my Effexor at the time as well. So maybe that would have helped…" Ex. 1 (Schultz Dep.) at 64:23-65:7. In other words, Plaintiff was going to maintain the same basic treatment she had been through before, and merely hoped it would be enough for her to regain the ability to perform the essential functions of her job. This is speculative at best, and the medical records cease at February 14, 2020, at which point Plaintiff submitted a request to engage in group therapy. Ex. 1 (Schultz_00661). No other records were produced until Plaintiff sought treatment for mental health issues again in June 2020. Ex. 1 (Schultz_00667).

In contrast to the extension request through February 21, the prior personal leave that NWP did approve for January 2020 plainly set forth that Plaintiff would go through an intensive out-patient program with goals of her being ready to return to work by January 21, 2020. But the out-patient program did not work because Plaintiff instead requested

///

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 13**

additional time off with her doctor confirming that, despite the intensive outpatient program, Plaintiff was still unable to perform the essential functions of her job.

Here, unlike *Kachur*, where the plaintiff was seeking ongoing treatment of a *physical* injury that was for all intents and purposes was presumed to heal, here Plaintiff's symptoms were not improving and there was no presumption, other than Plaintiff's speculation, that Plaintiff would be ready by February 21, 2020.  After an intensive outpatient program that failed, Plaintiff simply returned to treatment she was seeking before that she herself could only speculate, "maybe would have helped."  Plaintiff could provide no recollection of when her doctor did,[1] in fact, release her to return to any work, and Plaintiff's medical records are void of any such release within the timeframe around February 21, 2020.  Therefore, unlike *Kachur*, Plaintiff's continued extension requests, without any specific treatment or plan to address her inabilities to perform the essential functions of her job, were not a reasonable accommodation request and NWP cannot be said to have unreasonably denied the same.

### (ii)    NWP faced an undue hardship

Setting aside the argument above that Plaintiff's extension request was not a reasonable accommodation because she was uncertain if she could return to work by that time, Plaintiff's extension request also presented an undue hardship to NWP.  That undue hardship relieves NWP of the requirement of providing a reasonable accommodation and NWP cannot be said to have discriminated against Plaintiff for the same reasons.

An unpaid medical leave is not a reasonable accommodation if it poses an undue hardship on the employer (*Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994)

---

[1] Ex. 1 (Schultz Dep.) at 72:19-25.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 14

(citing 42 U.S.C. § 12112(b)(5)(A) and OAR 839-006-0245)), or if the leave has an

unspecified end date or otherwise is vague as to the amount of leave necessary. *See, Larson*

*v. United Nat. Foods W. Inc.*, 518 F. App'x 589, 591 (9th Cir. 2013) (finding that "an

indefinite, but at least six-month long, leave of absence to permit [employee] to fulfill

[doctor]'s treatment recommendations so that he might eventually be physically qualified

under the DOT regulations is not a reasonable accommodation").

Undue hardship is generally defined under the ADA as a significant difficulty or

expense to the employer, in light of the factors such as the nature and cost of the requested

accommodation, the number of persons employed at the facility and the effect, expense, and

impact on the operations of that facility, and the type of operation or operations of the

facility. 42 U.S.C. §12112(10).

Here, NWP would suffer an undue hardship to continue Plaintiff's personal leave into

February and, most likely, past the requested February 21, 2020 date. Plaintiff had taken

several leaves in succession, and when she had returned to work, little was getting done,

which caused stress and an unsustainable workload for Plaintiff's department:

> At this point operationally you're very much suffering as a
> department, and my enlisting Christy's help was to try to figure
> out and navigate this unsustainable situation with the repeated
> leaves and how it was impacting our department. And it was
> time to make, I guess - - it was a frustrating time for me because
> we had rally worked very hard to move forward with helping
> Angela. And the repeated leaves were causing stress on the
> department, as I indicated before, the workload, and I was
> seeing no end in sight. And while she did return to work, there
> was not - - there was - - she had barely worked over the course
> of those several - - several weeks, and it wasn't sustainable for
> us at that busy time.

Ex. 2 (Andersen Dep.) at 78:8-21.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 15**

Ms. Andersen testified that the beginning of the year was particularly busy, and that the department "needed all hands on deck…" *Id.* Ex. 2 (Andersen Dep.) at 78:22-79:6. Nonetheless, NWP "afford[ed] [Plaintiff] with all considerations that we're required to." *Id.* Ex. 2 (Andersen Dep.) at 79:7-12. NWP was unable to temporarily hire anyone to cover Plaintiff's position because "[t]he nature of the work wouldn't have - - we wouldn't have benefitted from having someone cover for that time." *Id.* Ex. 2 (Andersen Dep.) at 88:12-23.

The ultimate decision as to whether the department could sustain Plaintiff's leave request fell on Ms. Andersen who, after considering all options, determined the leave was not sustainable for the department. *Id.* Ex. 2 (Andersen Dep.) at 81:23-82:9. Ms. Andersen especially considered that she "had no way of knowing" when Plaintiff would return to work. *Id.* Ex. 2 (Andersen Dep.) at 84:11-85:3.

Unfortunately, because of COVID-19 pandemic, and with only limited exceptions, a hiring freeze was put in place for NWP shortly after Plaintiff's employment was separated. *Id.* (Daniels Dep.) at 78:8-13; (Larsen Dep.) at 50:6-15. Although NWP submitted to replace Plaintiff as early as February 5, 2020, as a result of the hiring freeze, a replacement for Plaintiff was not hired until October 2020. (Daniels Dep.) at 73:20-25; 75:2-7; (Rice Dep.) at 14:17-20.

To the extent Plaintiff argues that NWP did not actually suffer a hardship because it did not replace Plaintiff until October 2020, the Court should not entertain such an argument. The only reason a replacement was not hired was because of the unforeseen COVID-19 pandemic. NWP made every effort to replace Plaintiff as soon as she separated from her employment, submitting for permission to hire a replacement within just a couple of days from her separation. Thus, but-for the pandemic, NWP would have promptly replaced

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 16**

Plaintiff to avoid suffering the undue hardship. The Court should therefore grant summary judgment in favor of NWP as to this claim.

      **(b)**      **Ms. Schultz's Alternative Theory Under the ADA – Hostile Work Environment**

Plaintiff includes "as a separate basis for liability" under her ADA disability discrimination claim an alternate theory that she was subjected "to a hostile work environment directed at her disability/perceived disability." Dkt. 1 (Complaint) at ¶ 56.

To establish a cognizable claim for hostile work environment based upon a disability, Plaintiff must show:

> (1) she was a member of a protected class; (2) she was subjected to verbal or physical conduct 'because of' her disability; (3) this conduct was unwelcome; and (4) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment.

*Austin v. Wal-Mart Stores, Inc.*, No. CIV. 07-1306-HA, 2008 WL 4936480, at *6 (D. Or. Nov. 14, 2008) (citing *Shaver v. Indep. Stave Co.,* 350 F.3d 716, 721 (8th Cir. 2003); *see Wheeler,* 974 P.3d at 214 ("because of" element required under Oregon law; *Fred Meyer,* 954 P.2d at 808 (severe or pervasive element required under Oregon law)).

The unwelcome conduct must be "sufficiently severe or pervasive to alter the conditions of her employment," and must be directed at her disability. *Id.* For her claim to survive, Plaintiff must also show sufficient facts "to suggest that a 'reasonable person would find [her work environment] hostile or abusive." *Garity v. APWU Nat'l Labor Org.*, 655 F. App'x 523, 524 (9th Cir. 2016) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787., 118 S. Ct. 2275 (1998).

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 17**

Even when a hostile work environment exists, however, "an employer is only liable for failing to remedy harassment of which it knows or should know." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995).

Here, Plaintiff **never** reported any harassment **to anyone** at NWP. Ex. 1 (Schultz Dep.) at 52:2-5 ("Q. Okay. How about the harassment from Lucy Andersen and April Rice? Did you ever report that to anybody at Northwest Permanente? A. No.") Although Plaintiff also testified that she did not report the alleged harassment because she was worried about losing her job (*see*, *Id.* Ex. 1 (Schultz Dep.) at 52:6-11), she was already worried about losing her job anyway because of her poor performance. Ex. 1 (Schultz Dep.) at 56:5-15. Plaintiff could have reported the alleged harassment but chose not to. There is no question of fact that NWP was unaware of any alleged harassment or hostile work environment for Plaintiff and therefore the Court should grant summary judgment in NWP's favor as to this alternative theory.

Even setting aside the lack of knowledge, the examples that Plaintiff provided during her testimony of a hostile work environment hardly satisfy the severe and pervasive element of a hostile work environment, with Plaintiff testifying that she felt that Andersen was "inconsiderate":

> Well, the time that -- when I had my foot surgery and, you know, I wanted to come back to work sooner, but I was only able to telecommute because I couldn't walk, couldn't lift, couldn't bend, couldn't drive. And I remember Lucy telling me that I could go ahead and purchase, like, a scooter -- type of scooter where I could be able to go into work. But I still wasn't able to drive.
>
> So it just -- when she was saying things like that, it was just -- **I felt it was inconsiderate, because, you know, that's if I had**

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 18**

**money to buy a scooter, you know, to be able to get to work.**
I felt that she was accommodating to everyone else but myself.

Ex. 1 (Schultz Dep.) at 62:7-19 (emphasis added).

Plaintiff testified that Rice was "nitpicking" and "critiquing":

> Q.      Okay. And what was April doing about that same time,
> September, October, that was harassing?
>
> A.      **She was nitpicking me**. You know, she was going into
> my emails. When I came back -- I had files in my email.  She
> deleted some of my files. She deleted some of my emails that
> were helpful to me. And then when I was supposed to do
> something and I couldn't find something in an email, you know,
> I felt --I felt that she was sabotaging my work.
>
> **And -- and she was critiquing the way I was sending emails**.
> But then, you know, when I, you know, did send an email that
> was good, you know, she said, "You sent" -- that email that I
> sent was good. And then the next thing I know, I'm getting an
> email from Lucy Anderson that I was in trouble for the way I
> sent the email.

Ex. 1 (Schultz Dep.) at 47:6-20 (emphasis added).

Finally, Plaintiff also testified that Rice was "condescending":

> Q.      And what do you mean by 'ridicule?'
>
> A.      Just the way she made me - - the way she made me feel
> and just - - she was just very **condescending** towards me, and
> how she talked to me, I just felt belittled…

Ex. 1 (Schultz Dep.) at 77:21-24 (emphasis added).

These examples do not target Plaintiff's disability nor are they severe and pervasive

enough to rise to the level of a hostile work environment.  Plaintiff was not performing to

expectations, so the fact that Ms. Rice may have "nitpicked" or "critiqued" Plaintiff's work

product was not because of her disability but was to help Plaintiff improve.  Regardless,

///

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 19**

these examples do not support a hostile work environment and therefore NWP should be granted summary judgment in its favor.

2.    **Count 3 - Retaliation for Invoking Disability-Related Rights Under ORS 659A.109**

Under ORS 659A.109, an employer may not retaliate against an employee who applies for benefits or invokes the Oregon Rehabilitation Act:

> It is an unlawful employment practice for an employer to discriminate against an individual with respect to hire or tenure or any term or condition of employment because the individual has applied for benefits or invoked or used the procedures provided for in ORS 659A.103 (Policy) to 659A.145 (Discrimination against individual with disability in real property transactions prohibited) or has given testimony under the provisions of ORS 659A.103 (Policy) to 659A.145 (Discrimination against individual with disability in real property transactions prohibited).

ORS 659A.109.

Unlike the discriminatory prohibition of ORS 659A.112, ORS 659A.109 is not limited to a "person with a disability." *Compare*, ORS 659A.112(2)(e) *with* ORS 659A.109; *see also*, *Herbert v. Altimeter, Inc.*, 230 Or. App. 715, 728, 218 P.3d 542, 549 (2009) (noting ORS 659A.109's "protections are not limited to a 'person with a disability'" like ORS 659A.112(2)(e) is). Under the Oregon Rehabilitation Act, a request for a reasonable accommodation in connection with a disability may qualify as a protected activity. *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1141 (D. Or. 2013).

Here, Plaintiff alleges she was terminated in response to her request for an extension of unprotected leave that she further alleges was a reasonable accommodation request. To succeed with her claim, she must show (1) that her request was a reasonable accommodation; and (2) that she was terminated because she asked for a leave or, at the very least, that her

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 20**

request for leave was a substantially motivating factor to her termination. Her claim fails for both required showings.

Plaintiff's request for a personal leave extension was not a reasonable accommodation. There was no plan for her treatment during the requested extension period, and Plaintiff herself could only speculate, even years later at her deposition, as to what would have changed in those weeks after which she claims she could have returned to work. There is no evidence that Plaintiff was ready to return to work by the February 21, 2020 date. Her medical records only indicate ongoing health issues at the same baseline (if not lower) than before she even took the leave. Ahead of her additional extension request that was denied, NWP had approved a leave for her to attend an intensive outpatient program which still did not help Plaintiff perform the essential functions of her job. Plaintiff's requested extension provided no estimate, other than a date, of how Plaintiff's condition would improve to the point where she was able to return to work by February 21. Thus, her leave request was not a reasonable accommodation.

Moreover, Plaintiff was not terminated because she asked for a leave, or because she took a leave. Plaintiff was separated from employment, with a re-hirable status, because the department could not sustain an absence in her position any longer. Her separation from NWP was because of workload management, **<u>not</u>** because Plaintiff was asking for a leave or took a leave. The burden of sustaining that leave with an unfilled position became too great for the department's workload, and that is why NWP separated Plaintiff's employment. There is no question of fact as to that reasoning, and therefore NWP is entitled to summary judgment in its favor.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 21**

**B.     Counts 4, 5, and 10 – FMLA and OFLA Denial, Interference, and Retaliation**

Like discrimination claims, courts will construe claims under the Oregon Family

Leave Act ("OFLA") and the federal Family Medical Leave Act ("FMLA") under the same

standards.  *Kelly*, 400 F. Supp. 3d at 1110-11 (citing ORS 659A.186(2)).  Under both the

FMLA and OFLA, employees are entitled to 12 workweeks of leave during any 12-month

period when "a serious health condition … makes the employee unable to perform the

functions of the position of such employee."  *Id.*, 400 F. Supp. 3d at 1111 (quoting 29 U.S.C.

§ 2512(a)(1)(D)).  Among its options for calculating the 12-month period, employers may

use a "rolling" 12-month period "measured backward from the date an employee uses any

FMLA leave."  29 C.F.R. §825.200(b)(4).

**1.     Claims Related to Leave Interference and Denial**

To establish an interference or wrongful denial claim under the protected leave acts,

the employee must show that:

> (1) he was eligible for the FMLA's protections, (2) his employer
> was covered by the FMLA, (3) he was entitled to leave under
> the FMLA, (4) he provided sufficient notice of his intent to
> take leave, and (5) his employer denied him FMLA benefits to
> which he was entitled.

*Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 647 (9th Cir. 2016) (quoting *Sanders v.*

*City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

If an employee is not eligible for FMLA or OFLA benefits, they cannot maintain a

claim for denial or interference of protected leave as a matter of law.  *See*, *Id.* (finding

employee was not eligible for protected leave and therefore claim for denial of leave could

not be maintained).  "An employee that has used the entirety of her FMLA leave is not

eligible for FMLA leave until the start of the next 'leave year.'"  *Webb v. Intel Corp.*, No.

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 22**

3:17-CV-01089-SI, 2018 WL 1547354, at *2 (D. Or. Mar. 29, 2018) (quoting 29 C.F.R.

825.200); *see also*, *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 112, 1120 (9th Cir. 2001)

(explaining that FMLA provides 12 weeks of leave per "leave year," which is a 12-month

period calculated by the employer).

Employers may calculate their leave allowances in a variety of ways, including

adopting a calendar year (wherein at January of a new year the leave protections reset), or by

a rolling twelve-month period (wherein the twelve-months of the "leave year" begins when

the employee starts their leave and does not reset in January).  *See*, 29 C.F.R. § 825.200;

*Bachelder v. Am. W. Airlines, Inc.,* 259 F.3d 1112, 1126 (9th Cir. 2001).

Here, it is undisputed that Ms. Schultz exhausted her 12 weeks of protected leave

before she was terminated.  *See*, Dkt. 31 (Undisputed Facts) at ¶ 14.  NWP notified Plaintiff

that her available protections under the FMLA and OFLA were going to expire as of

December 31, 2019.  *Id.*  NWP calculates its leave years on the rolling twelve-month basis

and has not adopted the calendar-year method.  Therefore, there is no dispute that Plaintiff

exhausted her leave before she asked for an extension in January 2020 and she cannot pursue

an interference or wrongful denial claim for the denial of her leave in January 2020 as a

matter of law.

Plaintiff also alleges that NWP interfered with her protected leave during 2019

though.  *See*, Dkt. 1 (Complaint) at ¶ 11 (alleging that "In the beginning of July 2019,

Anders[e]n and Rice, held a meeting with Plaintiff where once again they subjected Plaintiff

to heightened criticism and assigned her an extensive and unreasonably burdensome list of

tasks for her to complete prior to making [sic] medical leave."); ¶ 14 (alleging that, "On

November 26, 2019, Plaintiff met with Anders[e]n and Christy Daniels from human

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 23**

resources. Plaintiff was provided with a four-page long write-up and told she had one year to improve her work or would be terminated. Prior to requesting medical leave, Plaintiff had never received any corrective action.").

Contrary to Plaintiff's allegations, she was not subjected to heightened criticism in July 2019, and she was not asked to do any tasks which were not already part of her job description and expectations for that role. Ex. 1 (Schultz Dep.) at 37:23-25 ("Q…The tasks that they were giving to you, were they beyond what your job duties were? A. No. But it wasn't within a reasonable time frame."); 38:22-25 ("Q. Did either Lucy or April, either - - either of them, tell you directly that they were mad that you were putting in for FMLA? A. No."); 39:1-4 ("Q. Did either of them tell you that it was going to be a problem or a burden or they had to do extra work or complain or anything like that? A. No.").

Also contrary to Plaintiff's allegations, she testified that she was able to take her requested leave after receiving her work development plan without any issues:

> Q. And how was your -- your mental health at this point, in September, October, November?
>
> A. It definitely wasn't good. It was starting to go downhill.
>
> Q. Were you still on intermittent FMLA leave? Were you able to still take that one day a week or whatever the intermittent was?
>
> A. I believe so, but I'm not sure, because I think I had mentioned prior that I think you have to fill out the FMLA every so often. So if it was for three months, maybe it would have been a time that I would have had to renew it, but I can't, honestly, remember.
>
> Q. Okay. But you don't remember being prevented from taking it, do you?
>
> A. No.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 24**

Q. Okay. It wasn't the case where you said, "I need to take this as part of my intermittent leave" and Lucy said, "No. We can't do that"?

A. None that I can remember.

Ex. 1 (Schultz Dep.) at 53:15-54:8.

Indeed, Ms. Andersen testified that the WDP was put in place "to support" Plaintiff, "to hold her to the same accountability as all of my coordinators in getting her work done," and that "[i]f it stressed her, you know, that wasn't my intent." Ex. 2 (Andersen Dep.) at 50:12-51:6.

All of Plaintiff's requests for protected leave were granted. Any allegations by Plaintiff that she was stressed or that NWP had ulterior motives in pressuring her around the same time as her leave requests speak to a retaliation claim but are not interference because all the leaves were requested. Further, there is no dispute that Plaintiff exhausted her FMLA and OFLA leave before she was terminated, and before her January 21, 2020 extension request.

Therefore, there is no question of material fact that Plaintiff was not entitled to additional FMLA or OFLA protections after December 31, 2019, and she cannot invoke the protections of these respective Acts for any alleged conduct after that date. Before she exhausted her FMLA and OFLA leave time, all requested leaves were approved under FMLA and OFLA. As such, her claim fails as a matter of law and the Court should grant summary judgment in NWP's favor.

## 2. Retaliation Claims Under FMLA and OFLA

Retaliation claims under the FMLA and OFLA arise from the provisions of the respective Acts that prohibit employers from discharging employees for "opposing a practice

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 25**

made unlawful by this chapter." 29 U.S.C. §2615(a)(2). Unlike interference and denial claims, a retaliation claim does not require the plaintiff to establish they were eligible for FMLA or OFLA benefits. Rather, to establish a *prima facie* case of retaliation under the FMLA and OFLA, an employee must show that:

> (1) he availed himself of a protected right; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions.

*Price v. Multnomah Cty.*, 132 F. Supp. 2d 1290, 1296 (D. Or. 2001) (citing *Morgan v. Hilti,* 108 F.3d 1319, 1325 (10th Cir. 1997); *Washington v. Fort James Operating Company,* 110 F. Supp. 2d 1325, 1330 (D. Or. 2000)).

Here, Plaintiff only requested FMLA and OFLA leave in 2019, not in 2020, so her termination in February 2020 cannot be the basis for her FMLA/OFLA retaliation claim. Rather, Plaintiff alleges that the WDP in November 2019, as well as the alleged increased scrutiny earlier in 2020, were in retaliation for her requesting protected leave under FMLA and OFLA.

There is no question of material fact that there is no causal connection between Plaintiff's requests for FMLA/OFLA leave in 2019 or with any alleged increased scrutiny or the issuance of the WDP. Plaintiff testified that the expectations set forth in her work lists and even in her WDP were no more than her normal job description. Ex. 1 (Schultz Dep.) at 37:23-25 ("Q…The tasks that they were giving to you, were they beyond what your job duties were? A. No. But it wasn't within a reasonable time frame."); 38:22-25 ("Q. Did either Lucy or April, either - - either of them, tell you directly that they were mad that you were putting in for FMLA? A. No."); 39:1-4 ("Q. Did either of them tell you that it was

///

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 26**

going to be a problem or a burden or they had to do extra work or complain or anything like that? A. No.").

The only connection between Plaintiff's write-ups, performance review, and WDP is Plaintiff's speculation. There is no evidence, other than a temporal proximity, that Plaintiff's requests for FMLA/OFLA leave, or that Plaintiff took FMLA/OFLA leave, had any connection to NWP asking that she perform her job duties to normal expectations. Rather, the evidence shows that Plaintiff was **not** performing her job duties to NWP's expectations. Plaintiff herself testified that she felt only the *deadlines* for her tasks were unrealistic:

> Q. So you come back, and you get this email with all these expectations. Were you able to meet those expectations?
>
> A. I don't believe I was able to meet the expectations only because they were -- they were giving me -- they were very specific with me, giving me deadlines on when things needed to be done, when other people in my department weren't given those same deadlines.
>
> Q. So if I'm understanding correctly: You're saying that your coworkers -- other program coordinators did not have the same expectations as you did as far as deadlines?
>
> A. Everyone had deadlines in the department, but they -- they weren't strict with my other coworkers.
>
> Q. Okay.
>
> A. At least I didn't -- I don't think so.

Ex. 1 (Schultz Dep.) at 45:6-19.

Thus, the evidence shows that Plaintiff was not meeting expectations and *that* is why she was given a WDP and *that* is why Ms. Andersen and Ms. Rice were asking Plaintiff about her work more than others. Ms. Andersen wanted to assist and support Plaintiff, not retaliate against her:

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 27**

...I just knew that I had a responsibility to hold her to the same accountability as all of my coordinators in getting her work done. I felt like if she understood that **this was a supportive measure to help her**, you know, have a clear sense of what the expectations are, that it would help motivate her to do - - to realize this work is important, we can't be stalling out. I don't know. If it stressed her, you know, it wasn't my intent.

Ex. 2 (Andersen Dep.) at 50:12-51:6 (emphasis added).

Because there is no causal connection between NWP asking Plaintiff to perform her basic job duties and Plaintiff's requests for leave, or taking leave, and because Plaintiff had exhausted FMLA/OFLA before she asked for an extended personal leave in 2020, Plaintiff's claim for FMLA/OFLA retaliation fails as a matter of law.

**C.     Counts 6 and 7 – Claims Related to Sick Leave Denial/Interference and Retaliation/Discrimination**

Similar to FMLA and OFLA leaves, the Oregon Sick Leave Act ("OSLA") prohibits an employer from denying, interfering with, or otherwise discriminating or retaliating against an employee in relation to requests or inquiries regarding sick time. *See*, ORS 653.641(1) and (2). Under OSLA, sick time for employees "accrue at least one hour of paid sick time for every 30 hours the employee works or 1-1/3 hours for every 40 ours the employee works," up to 40 hours per year. ORS 653.606(1)(a). Only sick time accrued under OSLA can give rise to a cause of action under the OSLA. *Carter v. Fred Meyer Jewelers, Inc.*, No. 3:16-CV-00883-YY, 2019 WL 2744190, at *9 (D. Or. Apr. 10, 2019) *report and recommendation adopted*, 3:16-CV00883-YY, 2019 WL 3206831 (D. Or. July 16, 2019) (holding that employee who had not worked minimum amount of time and had not accrued sick time could not maintain claim under OSLA).

///

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 28**

Like the FMLA and OFLA, OSLA provides several options for an employer to calculate an employee's sick leave allowance. *See*, ORS 653.606. One such method is to "front-load" sick time. *See*, ORS 653.606(1)(c); OAR 839-007-0007. Other methods allow the employee to "accrue at least one hour of paid sick time for every 30 hours the employee works or 1-1/3 hours for every 40 hours the employee works." ORS 653.606(1)(a).

Here, NWP does not use the "front-load" method for sick time, but requires its employees to work before sick leave begins accruing. As such, there is no dispute that Plaintiff exhausted her protected time under OSLA before the end of 2019 – so much so that she had a *negative* sick time balance of 36 hours. Ex. 3 (December 10, 2019 letter to Plaintiff) (stating, in part, "[a]s of your last paycheck, your available sick balance is **6 hours** and your available vacation balance is negative 36 hours").

It is also undisputed that Plaintiff did not work in the 2020 calendar year, and therefore she could not have accrued any further sick time under OSLA. Therefore, because Plaintiff exhausted her sick time before 2020, she was not eligible for OSLA and cannot assert any claims under the Act for the same reason. NWP is entitled to summary judgment in its favor as to these OSLA claims.

**D.     Count 8 – Wrongful Discharge**

Wrongful discharge is a common law tort wherein "there must be a discharge, and that discharge must be 'wrongful.'" *Thorson v. State ex rel. Dep't of Justice*, 171 Or. App. 704, 709, 15 P.3d 1005, 1008 (2000). The tort's premise is that, although the general rule is that employment is considered "at-will," "an at-will employee may not be terminated for 'fulfilling a societal obligation.'" *Id.* (quoting *Borough v. D.G. Averill Trucking*, 151 Or. App. 723, 725, 951 P.2d 202 (1997)).

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 29**

Here, Plaintiff alleges she was wrongfully discharged because she requested a personal leave as an accommodation for her mental health. *See generally*, Dkt. 1 (Complaint). However, Plaintiff's request was not a reasonable accommodation, and the request would have created an undue hardship for NWP. Even if NWP does not succeed in defending against the retaliation/discrimination claims above under the same defense, there is no question of material fact that it asserted an undue hardship in good faith because Plaintiff's return from work was speculative with no plan in place to help her perform the essential functions of her job, and NWP needed to fill Plaintiff's position with someone who could perform the essential functions as soon as it could. Having already accommodated multiple leave requests for Plaintiff, including personal leave requests, and having come to a tipping point of workload with minimal and stretched staff, there is no question of fact that NWP had a good faith belief it was facing an undue hardship. Therefore, Plaintiff's separation from work was not "wrongful" and her claim fails as a matter of law.

## IV. CONCLUSION

Plaintiff's claims are premised on her belief that she received heightened scrutiny and unreasonable demands to complete tasks while she was at work; and then while she was on leave, she believes that NWP wrongfully denied her an extension when, despite completing an intensive outpatient program that NWP *did* approve a personal leave for, she could not perform the essential functions of her job and she had no plan in place for how she was going to get there. NWP, in the meantime, was forced to cover Plaintiff's role for an extended period of time, placing strain on her department and coworkers to the point that NWP could no longer sustain Plaintiff's personal leave requests. This is not a wrongful discharge, it is not discrimination or retaliation, nor is it a violation of any law.

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**Page 30**

NWP is entitled to summary judgment in its favor because it was facing an undue hardship and because Plaintiff's requests for additional personal leave were not reasonable accommodations. Moreover, Plaintiff exhausted her protected time under FMLA, OFLA, and OSLA before she even asked for her last extension. Thus, there is no question of fact that the Court should grant summary judgment in NWP's favor as to all of Plaintiff's claims.

DATED: October 15, 2021

BULLIVANT HOUSER BAILEY PC

By /s/ *Alexander H. Hill*
    **Jeanne F. Loftis, OSB #913612**
    **Alexander H. Hill, OSB #135515**
    Telephone: 503.228.6351
    Attorneys for Defendants

4835-9100-8766.1 29366/00055

**Bullivant|Houser|Bailey PC**

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Page 31**