**Jeanne F. Loftis**, OSB #913612
E-mail:    jeanne.loftis@bullivant.com
**Alexander H. Hill**, OSB #135515
E-mail:    alexander.hill@bullivant.com
BULLIVANT HOUSER BAILEY PC
One SW Columbia Street, Suite 800
Portland, Oregon  97258
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANGELA SCHULTZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>NW PERMANENTE P.C., an Oregon limited liability company and abn NW PERMANENTE PHYSICIANS & SURGEONS P.C.,<br><br>　　　　　　　　　　Defendants. | Civil No.: 3:20-cv-00626-IM<br><br>**DEFENDANT'S TRIAL MEMORANDUM** |

Defendant Northwest Permanente P.C. ("NWP") submits the following trial memorandum for the Court's consideration in this matter.

### I.  INTRODUCTION/NATURE OF THE CASE

This is an employment dispute wherein Plaintiff Angela Schultz ("Plaintiff") alleges nine remaining claims against her former employer, NWP.  Generally, Plaintiff alleges

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 1**

discrimination, failure to accommodate, and retaliation related to her mental health and her requests for leave under the Family Medical Leave Act ("FMLA"), the Oregon Family Leave Act ("OFLA"), and the Oregon Sick Leave Act ("OSLA").

NWP denies Plaintiff's claims and any wrongdoing. It contends that its conduct was based on legitimate non-discriminatory reasons. NWP further contends that Plaintiff never requested accommodations beyond a leave and that therefore the interactive process was never triggered, and that Plaintiff's continuing leaves of absences created an undue burden on the small department Plaintiff worked in. The other employees in the department could no longer sustain the increased workload resulting from plaintiff's absences. Because it faced an undue hardship, NWP contends it was not required to accommodate Plaintiff's final leave extension request. Finally, NWP contends it did not interfere with or otherwise retaliate against Plaintiff because she took FMLA, OFLA, or OSLA time away from work.

## II. FACTUAL ISSUES FOR TRIAL

The pivotal factual questions at trial, which overlap many of the legal issues, will be:

1. Whether Plaintiff was able to perform the essential functions of her job with or without accommodations in light of Dr. Gray's last extension request stating that she could return to work with no restrictions or accommodations by February 21, 2020;

2. Whether Plaintiff's requests for accommodations were reasonable considering that she had repeatedly requested other leaves that "plausibly" would have assisted her in performing the essential functions of her job, but yet none of the prior leaves did so and Plaintiff merely continued to invoke leave request after leave request;

3. Whether Plaintiff's requests for accommodations of personal leaves created an undue burden to NWP considering that Plaintiff's ongoing and continued leaves of

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 2**

absences created a large workload for her coworkers that was not sustainable for her department of only four to five coordinators, and considering that hiring a temporary worker was not practical or feasible because of the unique tasks involved in the role;

    4.   Whether Plaintiff suffered any adverse employment actions, including alleged stricter deadlines for her work, being placed on a work development plan, and/or being terminated, because of her alleged disability and/or because of invoking FMLA, OFLA, and/or OSLA;

    5.   Whether NWP interfered with Plaintiff's protected leaves or requests for leave under the FMLA, OFLA, and/or OSLA;

    6.   Whether NWP subjected to Plaintiff to more stringent deadlines than her coworkers, submitted her to a work development plan, or ultimately terminated her employment because Plaintiff invoked the FMLA and/or the OSLA; and

    7.   Whether NWP acted in such an improper manner so as to support a claim for wrongful discharge.

NWP contends that Plaintiff was not a qualified individual under the meaning of the ADA, her requests for accommodations were not reasonable, and that her personal leaves created an undue burden for her department because of the ongoing increased workload. NWP further contends that it did not retaliate against Plaintiff because of her disability and that her invocation of FMLA, OFLA, and OSLA were not a negative or substantial factor in its decision making. Finally, NWP contends its reasons for separating Plaintiff's employment were for legitimate business reasons and not because of any alleged wrongful act by NWP.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 3**

## III. LEGAL ISSUES

Plaintiff conceded some of her claims and theories at summary judgment, but there remain nine causes of action to be tried. Accordingly, the following legal issues remain in this matter:

**1. Counts 1, 2, and 9 – Disability Discrimination and Failure to Accommodate**

Plaintiff conceded to summary judgment of these claims based on a theory of hostile work environment. *See*, Dkt. 47 (MSJ Order). To prevail on the remaining theories, Plaintiff must show "(1) that she is 'disabled' within the meaning of the ADA; (2) she is a 'qualified individual' as defined by the ADA; and (3) she suffered an adverse employment action on the basis of her disability." *Orozco, v. Lamb Weston, Inc.*, No. 2:19-CV-00060-SU, 2020 WL 1957910, at *4 (D. Or. Apr. 23, 2020) (citation omitted).

**(i) Whether Plaintiff is a "qualified individual"**

An employee is considered a "qualified individual" when the employee is "able to perform the essential functions of the position at the time of her termination *without* accommodation, and then, if she cannot, whether she was able to do so *with* reasonable accommodation." *Id.*, 237 F.3d at *5 (emphasis in original) (quoting *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1188 (D. Or. 2016)).

Under Oregon law, although a personal leave can be a reasonable accommodation in some circumstances, the leave cannot be repeatedly invoked to allow an unqualified employee to avoid termination:

> Of course, the requirement to grant a leave where there are plausible reasons to believe that it would accommodate the employee's disability cannot be repeatedly invoked, thus permitting an unqualified employee to avoid termination by

Bullivant|Houser|Bailey PC

One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 4**

> requesting a leave of absence each time he is about to be fired. As we noted in *Kimbro,* the fact that a prior leave was granted and was unsuccessful may be a relevant consideration in determining whether additional leave would be a reasonable accommodation.

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 n. 13 (9th Cir. 2001) (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir.), *cert. denied*, 498 U.S. 814, 111 S. Ct. 53 (1990)).

Here, Defendant contends that Plaintiff is/was not a qualified individual because she cannot show that she was able to perform the essential functions of her job with or without reasonable accommodations. Plaintiff contends that all she needed was the three-week period away from work until February 21, 2020, to be able to perform the functions of her job. But NWP contends that the evidence that Plaintiff could return to work on February 21, 2020 (which mainly consist of Dr. Cynthia Gray's ADA Form of January 21, 2020, and Plaintiff's speculative testimony) is insufficient to show that Plaintiff was otherwise qualified under the ADA in the context of her repeated leave extensions which showed little to no progress in her condition or ability to perform the essential functions of the job.

In the context of Plaintiff's multiple leave extension requests, none of which showed substantial improvement in Plaintiff's condition such that she appeared likely to return to work by February 21, 2020, the evidence carries less weight. The jury must decide whether Dr. Gray's single notation on the January 2020 ADA Form is sufficient to show that Plaintiff could return to work on February 21, 2020, and perform the essential duties of her job. Dr. Gray did not note that Plaintiff would need any other accommodations and instead the form states, like the forms previously submitted by Dr. Gray, that Plaintiff would not have any restrictions upon her return to work.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 5**

The only accommodation that Plaintiff asked for was more time away from work. Neither she nor her providers offered any alternative accommodations. Thus, like *Humphrey*, the question here is whether Plaintiff's repeated requests to extend her personal leave, considering her doctor's statements that she was not able to otherwise perform the essential functions of her job, were sufficient to qualify her under the ADA.

NWP contends that Plaintiff's requests for leave extensions did not qualify her under the ADA because her providers plainly stated she was unable to perform the functions of her job but did not offer any accommodations that could help her perform her job. The medical records show that Plaintiff was still suffering from depression and suicidal thoughts after her intensive outpatient program, and no plan was in place for the three weeks up to the February 21, 2020 return date. Therefore, the evidence shows that Plaintiff could not perform the functions of her job either with or without accommodations, and Plaintiff will fail to satisfy her burden for this element at trial.

### (ii) Whether Plaintiff's requests for extensions of her personal leave were "reasonable"

Reasonable accommodations "are mechanisms to remove barriers and provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001). If a medical leave, even if unprotected and/or unpaid, can result in treatment that helps the employee to once again perform the essential functions of their job once the leave is complete, that leave could be a reasonable accommodation. *See*, *Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2006) (noting that "[e]ven an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 6**

an undue hardship on the employer"); *see also*, 29 C.F.R. Part 1630, App. (stating in part that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment…").

Although "the ADA 'does not require an employee to show that a leave of absence is *certain or even likely to be successful* to prove that it is a reasonable accommodation,'" the employee "only needs to satisfy the minimal requirement that a leave of absence could *plausibly* have enabled [him] adequately to perform [his] job." *Kachur v. NAV-LVH, LLC*, 817 F. App'x 359, 361 (9th Cir. 2020) (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001)) (emphasis in original).

Under Oregon law, although a personal leave can be a reasonable accommodation in some circumstances, the leave cannot be repeatedly invoked to allow an unqualified employee to avoid termination:

> Of course, the requirement to grant a leave where there are plausible reasons to believe that it would accommodate the employee's disability cannot be repeatedly invoked, thus permitting an unqualified employee to avoid termination by requesting a leave of absence each time he is about to be fired. As we noted in *Kimbro*, the fact that a prior leave was granted and was unsuccessful may be a relevant consideration in determining whether additional leave would be a reasonable accommodation.

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 n. 13 (9th Cir. 2001) (citing *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir.), *cert. denied*, 498 U.S. 814, 111 S. Ct. 53 (1990)).

Finally, an employer's decision to grant one leave to an individual "does not obligate it to continue to grant that accommodation in the future, nor does it render the

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM
Page 7**

accommodation reasonable as a matter of law." *Leighton v. Three Rivers Sch. Dist.*, 693 F. App'x 662, 663 (9th Cir. 2017).

Here, the issue is whether Plaintiff's last request for another leave of absence, in light of her multiple prior extensions which showed little to no improvement in her condition, was a reasonable accommodation or not. Plaintiff must show that it was plausible that she would have been able to perform the essential functions of her job by February 21, 2020. But other than Dr. Gray's January 21, 2020 ADA Form, which has little to no information, there is no evidence to support this other than Plaintiff's speculation. Therefore, Plaintiff will have to rely on her own testimony (without any opinions expressed) and the January 21, 2020 ADA Form to show that she could have plausibly performed the essential functions of her job as of February 21, 2020. Without more evidence, NWP believes Plaintiff will fail to satisfy her burden for this element.

### (iii) Whether Plaintiff's requests for leave extensions created an undue burden for NWP

Under the ADA, an undue hardship is generally defined as a significant difficulty or expense to the employer, in light of the factors such as the nature and cost of the requested accommodation, the number of persons employed at the facility and the effect, expense, and impact on the operations of that facility, and the type of operation or operations of the facility. 42 U.S.C. §12112(10).

For example, this Court has noted that "'[u]ndue hardship may also be present when an accommodation would cause more than a *de minimis* impact on coworkers, such as depriving [them] of seniority rights or causing [them] to shoulder the plaintiff's share of potentially hazardous work' or the 'most difficult work shifts.'" *Stephens v. D.B. Roberts*,

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 8**

No. 3:20-CV-00673-BR, 2021 WL 3177399, at *6 (D. Or. July 27, 2021) (quoting *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999)).

In *Stephens*, this Court held that an undue burden was present where the employer's manager testified that the plaintiff's leaves of absence required co-workers to cover the plaintiff's job as well as their own, and that this was not "sustainable for my team to limp along and try to cover for [Plaintiff], because it was so challenging on my team to be down 25 percent of our work force." *Id.*

The *Stephens* Court also dismissed the plaintiff's argument that it took until a day after the plaintiff would have returned from leave for the defendant employer to hire his replacement. *Id.* The *Stephens* Court noted that not only was the replacement in training before the "official offer" after the day that the plaintiff was to return, but also that "[the plaintiff] does not point to any evidence that Defendant knew when it denied Plaintiff's July 2019 request for additional leave that it would take until September 1, 2019, for [the replacement] officially to become the field sales representative." *Id.*, at * 9.

Here, Plaintiff argued at summary judgment that NWP has not shown any evidence of financial difficulties because of Plaintiff's leave. But the standard is clear by the statute's plain language: the defendant must show the accommodation request by the plaintiff is ***either*** "significant difficulty **or** expense," not necessarily both. *See*, 42 U.S.C. § 12112(10)(A) (emphasis added). NWP's employees will testify as to their burden of covering Plaintiff's work and their own work for an extended period, and that the burden was not sustainable, just as in *Stephens*. Also, just as in *Stephens*, here the evidence will show that NWP moved to replace Plaintiff just two days after she was separated from employment, and that, at that time, NWP had no idea a global pandemic would shock the world only weeks later.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM
Page 9**

NWP does not intend to dispute whether it had sufficient funding for a temporary worker while Plaintiff was on leave. Indeed, testimony at depositions showed that NWP could not consider a temporary worker because of the unique tasks of Plaintiff's role. Other departments within NWP could not simply transfer over and be functioning and training a replacement would take a substantial amount of time beyond Plaintiff's leave. Plaintiff herself testified she thought it would take at least a year to learn the job proficiently. Thus, a temporary replacement was not a feasible option for NWP, and funding was not the issue – workload was.

NWP does not need to show a financial impact to show an undue burden. It can and will show an undue burden through the significant difficulties that Plaintiff's coworkers had to bear in her absence. The fact that NWP granted Plaintiff's initial requests for leave did not obligate it to grant extensions to that leave, and, because of the significant difficulties that Plaintiff's absence caused and was continuing to cause her department, this is sufficient to show that NWP suffered an undue burden.

### 2. Count 3 – Retaliation for Invoking Disability Related Rights

Plaintiff must show that NWP's decisions to submit her to adverse employment actions, including alleged stricter deadlines, a work development plan, and ultimately her termination, were because she was disabled. *See*, *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (setting forth *prima facie* elements of disability retaliation). Plaintiff has also asserted that April Rice, the lead in the department, allegedly deleted her e-mails and sabotaged her work.

Plaintiff bore the initial duty to inform NWP if she needed accommodations, even if she did not have specific accommodations to request. *See*, *Benz v. W. Linn Paper Co.*, 803 F.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

DEFENDANT'S TRIAL MEMORANDUM
Page 10

Supp. 2d 1231, 1257 (D. OR. 2011) ("As does federal law, Oregon law places the burden of initially informing the employer of the need for an accommodation on the employee.") (citing OAR 839-006-0206(4)).

Here, the evidence at trial will show that Plaintiff did not request *any* accommodations related to her mental health other than more time away from work, which was granted except for her last request. Because it was Plaintiff's burden to initiate the interactive process by asking for accommodations and she did not, she will fail to satisfy her burden at trial.

Consistent with summary judgment, Plaintiff will likely argue that any poor performance on her part was because of her disability, and that she told her supervisor and manager that she was "stressed" during disciplinary meetings. This, however, does not satisfy Plaintiff's burden of asking for accommodations. Plaintiff was already granted intermittent leave for mental health that NWP approved. NWP would have no idea if she needed more or different accommodations unless and until Plaintiff asked for them, which never happened. Again, the only accommodations Plaintiff asked for was time away from work, which was granted except for the last leave request.

Additionally, Plaintiff will fail to show a causal connection between the alleged adverse employment actions and her disability. For example, she was not given unreasonable deadlines. She already concedes that she was not given additional job duties and she only asserts that the deadlines she was given were not reasonable or were otherwise unlike those given to her coworkers. NWP believes the evidence will show that the deadlines were reasonable and consistent with Plaintiff's coworkers. Of note is that Plaintiff could not cite to any specific coworker who was not given similar deadlines.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 11**

NWP also believes that the evidence at trial will show that Ms. Rice was not "sabotaging" Plaintiff but was instead trying to help her. The evidence will show that Ms. Rice was very close friends with Plaintiff – so close that she was godmother to Plaintiff's son. The evidence will show that Ms. Rice was working to help Plaintiff succeed and not the other way around. Plaintiff will not be able to establish this as an adverse employment action at trial.

Although the work development plan was a disciplinary performance document, NWP believes Plaintiff will not be able to dispute that she was not performing to NWP's expectations for her job, and therefore the work development plan was warranted. Based on the arguments already presented, Plaintiff will likely argue that the work development plan was caused by her disability, because the behaviors and performance that were at issue were a result of her disability. In other words, Plaintiff will likely argue that any poor performance was not that but was instead the result of her disability. This argument will fail.

As noted above, the law states that a plaintiff must show that they are a qualified individual under the ADA, meaning they must show that they can perform their job duties with or without accommodations. If Plaintiff needed accommodations to avoid poor work performance, then she needed to ask for those accommodations. Otherwise, to be a qualified individual and invoke the ADA, Plaintiff must be able to show that she could perform the essential functions of her job to NWP's expectations *with or without* accommodations, which she cannot. Therefore, she cannot rely on the argument that her poor performance was because of a disability, because if it was, then it was her burden to ask for accommodations and initiate the interactive process.

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 12**

### 3. Counts 5-7 and 10 – FMLA, OFLA and OSLA Interference and Retaliation

Plaintiff conceded any claims based on denial under these Acts, and she also clarified that the claims she intends to pursue under OFLA at trial are only interference claims and not retaliation. *See*, Dkt. 47 (MSJ Order) at p. 8 n. 4 ("Notwithstanding the way Count Five is titled, Plaintiff is plainly asserting an interference claim…").

#### (i) FMLA and OFLA Interference

An employer interferes with an employee's exercise of rights under the FMLA when the employee's invocation of the FMLA is a "negative factor" in the employer's adverse employment action(s). *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). However, "the 'FMLA is **not** implicated and does not protect an employee against disciplinary action based upon [ ] absences' if those absences are not taken for one of the reasons enumerated in the Act." *Id.* (quoting *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1147 (8th Cir. 2001)) (emphasis added). The same standard applies to OFLA interference claims. *See*, *Kelly v. Boeing Co.*, 400 F. Supp. 3d 1093 (D. Or. 2019), *aff'd*, 848 F. App'x 692 (9th Cir. 2021).

Here, Plaintiff contends that NWP considered her FMLA leave as a negative factor in asking her to complete tasks within more stringent deadlines than her co-workers and in placing Plaintiff on a work development plan. But the two absences that Plaintiff's work development plan refers to – October 16 and 17 of 2019 – were not taken as FMLA/OFLA. E-mails and evidence show that Plaintiff even expressly confirmed these absences were not FMLA/OFLA with NWP's benefits department. Moreover, Plaintiff has already conceded that the tasks she was given were within her normal job duties, and NWP will show at trial

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 13**

that the deadlines were not more stringent than her coworkers and she was not scrutinized at any higher level than her coworkers. Finally, NWP will show at trial that Plaintiff's FMLA/OFLA leaves were not a negative factor to these decisions, and therefore Plaintiff's claims will fail.

### (ii) OSLA Denial

Under Oregon law, "[o]nly sick time accrued under OSLA can give rise to a cause of action under the OSLA. *Carter v. Fred Meyer Jewelers, Inc.*, No. 3:16-CV-00883-YY, 2019 WL 2744190, at *9 (D. Or. Apr. 10, 2019), *report and recommendations adopted*, No. 3:16-CV-00883-YY, 2019 WL 3206831 (D. Or. July 16, 2019). Therefore, if an employee has exhausted protected time under OSLA, any further allegations of denial of sick leave cannot invoke the protections of the Act. *Id.*

Here, Plaintiff alleges that NWP denied her sick leave when she was eligible for it. But again, none of her leaves were denied save for her last personal leave extension request. And by January 2020, Plaintiff had exhausted any accrued sick leave she had and was no longer eligible to invoke OSLA. Therefore, because Plaintiff had no protected OSLA leave available in January 2020, the denial of her personal leave is not a violation of OSLA, and Plaintiff's claim will fail at trial.

### (iii) OSLA Interference/Retaliation

To the extent Plaintiff relies on allegations other than her termination in 2020 for OSLA interference and/or retaliation, the same standards and arguments as the FMLA/OFLA interference and retaliation claims apply. Here, however, Plaintiff cannot show that her use of protected OSLA time in 2019 was a negative factor in any decisions by NWP because she

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 14**

was not subjected to heightened scrutiny, and she was not placed on a work development plan because of using OSLA protected time. Therefore, these claims will fail at trial.

### 4. Wrongful Discharge

Plaintiff's wrongful discharge claim relies on her success with proving that NWP acted with ill intent or otherwise violated one or more of the Acts that Plaintiff relies on. Because Plaintiff will fail to satisfy her burden on those claims, she likewise will fail to satisfy her burden for this claim as well.

## IV.  EVIDENTIARY ISSUES

NWP anticipates the following evidentiary issues to arise during trial of this matter.

### 1. Kaiser Foundation Hospitals or Health Plan and related entities ("the Kaiser entities") should not be allowed to be introduced

NWP incorporates its Motions in Limine (Dkt. 49) and any responses in opposition to Plaintiff's respective Motion to Introduce Evidence (Dkt. 48) as though fully set forth herein.

However, in summary, Plaintiff will attempt to improperly introduce evidence and/or argument that NWP had the Kaiser entities' resources available to it, and therefore NWP could not have suffered an undue burden. Evidence or argument to this effect will substantially prejudice NWP and confuse the jury. The Kaiser entities are not a party to this lawsuit, and Plaintiff has not alleged this theory in her operative Complaint. The Court should exclude any such evidence to avoid the substantial prejudice against NWP that the implications of being a part of, or otherwise under the control of, the Kaiser entities implies.

### 2. No expert witnesses were disclosed

NWP incorporates its motion in limine regarding Plaintiff's treating physicians as though fully set forth herein. In summary though, Plaintiff did not disclose any expert

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM
Page 15**

witnesses – either retained or no retained – and therefore any expert opinion beyond what her treating physicians can testify to from their respective records produced in discovery should be excluded. Should Plaintiff call these witnesses, they should not be allowed to opine beyond what their respective records produced in discovery show.

## V.  DAMAGES

NWP anticipates the following issues regarding damages may arise.

### 1.     Limited Wage Loss

NWP incorporates its Motion in Limine regarding Plaintiff's failure to mitigate by accepting a job in March 2021 as though fully set forth herein. However, in summary, NWP argues that Plaintiff should not be entitled to claim any wage loss beyond March 2021 because she was offered comparable employment that she declined because of reasons completely unrelated to NWP.

### 2.     Punitive Damages Limited to ADA Claims other than Retaliation

Plaintiff alleges punitive damages under the ADA and is not permitted to seek punitive damages under FMLA (*see*, *Farrell v. Tri-Cty. Metro. Tranp. Dist. of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008) ("It is well-settled that the FMLA, by its terms, 'only provides for compensatory damages and not punitive damages.'" (Citation omitted.)), OFLA or OSLA (*see*, Dkt. 6 (Plaintiff's Opp. to NWP's Motion to Dismiss) (arguing that OFLA and OSLA do not allow for punitive damages and thus her claim for wrongful discharge should survive).  Because Plaintiff did not plead for punitive damages under any other claims than the ADA, any argument or recovery for punitive damages must be isolated to claims associated with the ADA.  This means if Plaintiff fails to prove any of her ADA claims, she is precluded from recovery of any punitive damages.

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon  97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 16**

Further, Ninth Circuit and federal law do not permit recovery of punitive damages for ADA retaliation claims. *See*, *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) ("Being persuaded by the Seventh Circuit's reasoning, we hold, as did the Seventh Circuit in *Kramer*, that the plain and unambiguous provisions of 42 U.S.C. § 1981a limit the availability of compensatory and punitive damages to those specific ADA claims listed. ADA retaliation is not on the list").

Here, Plaintiff has multiple ADA claims, including retaliation. Should she succeed only with her retaliation claim, she cannot recover punitive damages. She may only recover punitive damages for her other ADA claims such as disability discrimination and/or failure to provide a reasonable accommodation.

## VI. CONCLUSION

The issues for trial of this matter are whether Plaintiff's various leaves of absences under the various Acts were a negative factor in NWP's decisions to place Plaintiff on a work development plan and ultimately separate her employment. Similarly, the other issues in this case are whether Plaintiff's disability was the cause of NWP's same actions.

NWP believes the evidence at trial will show that it made the decision to place Plaintiff on a work development plan because she was not performing to the level expected for the role, that NWP allowed all requested leaves save for the last extension request, and that NWP's reasoning in denying the last leave request was not a failure to accommodate because the request was not reasonable and because Plaintiff's ongoing absence in that

///

///

Bullivant|Houser|Bailey PC
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

DEFENDANT'S TRIAL MEMORANDUM
Page 17

department created an undue burden of increased workload that was not sustainable for Plaintiff's coworkers.

DATED: February 3, 2022

BULLIVANT HOUSER BAILEY PC

By /s/ *Alexander H. Hill*
    **Jeanne F. Loftis, OSB #913612**
    **Alexander H. Hill, OSB #135515**
    Telephone: 503.228.6351
    Attorneys for Defendants

4877-9359-7964.1 29366/00055

**Bullivant|Houser|Bailey PC**
One SW Columbia Street, Suite 800
Portland, Oregon 97204-4022
Telephone: 503.228.6351

**DEFENDANT'S TRIAL MEMORANDUM**
**Page 18**