**Robert K. Meyer, OSB No. 086470**
robert@oregonworkplacelaw.com
**Michael Owens, OSB No. 104720**
mike@oregonworkplacelaw.com
MEYER STEPHENSON
1 SW Columbia St Ste 1850
Portland, OR 97204
Voice: (503) 459-4010
Fax: (503) 512-5022


      Attorneys for Plaintiff


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **ANGELA SCHULTZ**, <br><br>       Plaintiff <br><br>   v. <br><br> **NW PERMANENTE P.C.**, an Oregon limited liability company and abn **NW PERMANENTE PHYSICIANS & SURGEONS P.C.**, <br><br>       Defendant. | Case No. 3:20-cv-00626-IM <br><br> **PLAINTIFF'S TRIAL MEMORANDUM** |

**TABLE OF CONTENTS**

I. INTRODUCTION......................................................................................................1

A.     **Summary of Claims at Trial**..............................................................................1

B.     **Issues Covered in Trial Brief**...........................................................................1

II. FACTUAL BACKGROUND ....................................................................................2

III. DISCUSSION ........................................................................................................4

A.     **The Court Should Decide Plaintiff's Claims for OFLA Leave Retaliation and Sick Leave Interference and Retaliation in Plaintiff's Favor, and the Jury Should Decide the Same for Plaintiff's FMLA Claim.** ..........................................................................4

B.     **The Jury Should Decide in Plaintiff's Favor on Her State and Federal Claims for Failure to Accommodate a Disability**..........................................................6

       1.     The Evidence That Defendant Failed to Engage in the Interactive Process to Provide Accommodations Is Uncontested.................................................6

       2.     There is Little If Any Evidence to Support Defendant's Defense of "Undue Hardship" and the Jury Should Reject the Defense...................................9

C.     **The Evidence Also Supports the Jury Finding Defendant Liable on Plaintiff's Claims for Disparate Treatment Disability Discrimination.** ........................................11

D.     **Plaintiff's Evidence Will Support the Jury Finding in Her Favor on Her Disability-Related Retaliation Claim.**.........................................................................11

E.     **Plaintiff's Wrongful Discharge Claim Based on Violations of FMLA, OFLA and OSLA Should Also Lead to a Finding of Defendant's Liability by the Jury.** ............12

IV. CONCLUSION......................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Alvarado v. Cajun Operating Co.*,
    588 F.3d 1261 (9th Cir. 2009) ......................................................................................12

*Bachelder v. Am. W. Airlines, Inc.*,
    259 F.3d 1112 (9th Cir. 2001) .........................................................................................5

*Barnett v. U.S. Air, Inc.*,
    228 F.3d 1105 (9th Cir. 2000) ......................................................................................7, 9

*Dunlap v. Liberty Nat. Prod., Inc.*,
    No. 3:12-CV-01635-SI, 2015 WL 1778477 (D. Or. Apr. 20, 2015) ................................7

*Holien v. Sears, Roebuck & Co.*,
    298 Or. 76 (1984) ..........................................................................................................13

*Humphrey v. Memorial Hosps. Ass'n*,
    239 F.3d 1128 (9th Cir. 2001) ......................................................................................6, 8

*Liu v. Amway Corp.*,
    347 F.3d 1125 9th Cir. 2003) ..........................................................................................4

*Pacosa v. Kaiser Found, Health Plan of the NW*,
    No. 09-cv-1137-BR, 2011 WL 208205 (D. Or. 2011) ...................................................13

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000) .......................................................................................12

*Schultz v. NW Permanente P.C.*,
    No. 3:20-CV-00626-IM, 2020 WL 4261273 (D. Or. July 23, 2020) ................................5

*Shepard v. City of Portland*,
    829 F. Supp. 2d 940 (D. Or. 2011) ................................................................................11

*Snead v. Metro. Prop. & Cas. Ins. Co.*,
    237 F.3d 1080 (9th Cir. 2001) .......................................................................................11

*Yeager v. Providence Health Sys. Oregon*,
    195 Or. App. 134 (2004) ................................................................................................13

**STATUTES**

42 U.S.C. § 12111(10)(A) ....................................................................................................9

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

42 U.S.C. § 12111(10)(B) ..................................................................................................10

42 U.S.C. § 12112 ...............................................................................................................6

42 U.S.C. § 12112(b)(5)(A)................................................................................................9

ORS 653.641 ..................................................................................................................4, 13

ORS 659A.109...................................................................................................................12

ORS 659A.112.....................................................................................................................6

ORS 659A.183................................................................................................................4, 13

ORS 659A.885(1)(a) ...........................................................................................................4

ORS 659A.885(3)..........................................................................................................4, 13

## REGULATIONS

29 C.F.R. Pt. 1630, App. § 1630.15(d)..............................................................................10

29 C.F.R. Pt. 1630, App. § 1630.9 ......................................................................................7

## OTHER AUTHORITIES

Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA, October 17, 2002, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.............................................10

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

# I. INTRODUCTION

## A. Summary of Claims at Trial

Plaintiff's will prove the following claims at trial to the jury:

- Family Medical Leave Act (FMLA) interference (Count Ten);

- Common law wrongful discharge for using protected leave (Count Eight);

- Disability discrimination under ADA and Oregon law (Counts One and Nine);

- Failure to accommodate a disability under ADA and Oregon law (Counts Two and Nine); and

- Retaliation for invoking disability rights under Oregon law (Count Three).

The jury will decide whether to award economic and non-economic damages on the wrongful discharge claim, back pay (including lost income and benefits) on the FMLA claim, and non-economic damages and back pay (including lost income and benefits) on the disability-related claims. The jury will decide whether to award punitive damages on the ADA disability discrimination and failure to accommodate claims.

Plaintiff will prove the following claims at trial to the Court:

- OFLA interference (Count Five); and

- Oregon Sick Time retaliation / interference (Count Six and Seven)

There is no right to a jury trial on those claims. The court will decide whether to award up to two years of back pay on these claims. ORS 659A.885. The court will also decide any award of front pay on the FMLA or disability-related claims.

## B. Issues Covered in Trial Brief

This trial brief is organized as follows. First, Plaintiff's focuses on her claims for Oregon Family Leave Act (OFLA) and Oregon Sick Leave Act (OSLA) interference, which should be

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

tried to the Court. As to those claims, Plaintiff discusses the relevant law on OFLA and OSLA and a roadmap on what Plaintiff expects the evidence to show. Second, Plaintiff discusses her theory on how the ADA interactive process and reasonable accommodation applies to the facts of the case and what evidence should be allowed in related to these claims and Defendant's undue hardship affirmative defense. Third, Plaintiff provides a brief summary of her other legal claims and theories that will be at issue in the trial.

## II. FACTUAL BACKGROUND

Plaintiff had an excellent performance history during her 17-year career with the Kaiser entities. In 2017, due to her strong work ethic and skills, Plaintiff was hired for a Program Coordinator position with NW Permanente. In this role, Plaintiff coordinated implementation of resident and student training activities and was supervised by April Rice and Lucy Andersen. Andersen regularly scheduled telecommuting into Plaintiff's work week and Plaintiff did not have any difficulties getting tasks done at home or working remotely. Based on Defendant's feedback, including a positive performance review, Plaintiff understood that her job as Program Coordinator was going well.

However, in 2019, Plaintiff needed to take medical leave for two separate reasons. Plaintiff began to suffer a flare-up of her depression and also needed foot surgery. In June of 2019, Plaintiff shared with Rice and Anderson that she was suffering from severe depression and needed treatment. That same month, Plaintiff submitted two requests for leave that qualified for protection under the Family and Medical Leave Act (FMLA) and the Oregon Family Leave Act ("OFLA"): one for leave based on her major depressive disorder and another for a foot surgery scheduled for July. The initial plan was for Plaintiff to take leave for her foot surgery and then exclusively telecommute during the post-surgery healing time of a few weeks. This made sense, as Plaintiff

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

already telecommuted once per week and several other program coordinators were also allowed to work from home.

Her use of medical leave and need disability accommodation changed everything, and proved to be her downfall. Andersen actually took away Plaintiff's pre-existing telecommuting schedule, forcing Plaintiff to take unpaid leave instead of being able to work from home after her surgery. The performance expectations that Andersen was specifically concerned with when Plaintiff returned to work had to do with focus and failure to complete tasks. However, Plaintiff's leave request from June 2019 made it apparent that Plaintiff's major depression could at times impact her performance, including focus and stamina. Plaintiff's disability was ignored. Following her disability disclosure and leave request, Plaintiff was also subjected to heightened scrutiny and discipline, much of it disciplining her for *symptoms* related to her known disability and use of leave.

Then, in an attempt to make it through a mental health crisis in December of 2019, Ms. Schultz sought less than two months of unpaid leave to go through intensive outpatient therapy. In late January of 2020, based on her progress in therapy, Ms. Schultz's doctor cleared Ms. Schultz to return to full duty on February 21, 2020. After receiving the doctor's release, Northwest Permanente told Ms. Schultz if she did not return to work by February 4, 2020—in violation of her doctor's orders—it would terminate her. When Ms. Schultz pleaded for the additional time off, Northwest Permanente refused and moving forward with the termination, claiming her department could simply not afford to have her out for the time until her full release, a period of less than three weeks.

Defendant's claim that it could not carry on for three additional weeks without Ms. Schultz is undermined by the fact that it failed to hire a replacement for Ms. Schultz for over eight months.

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

While the company has tried to attribute its failure to fill this role immediately to a COVID hiring freeze, its own HR Manager undermined this explanation when she testified that they could waive the freeze when needed and that the freeze was still going on when they ultimately did hire Plaintiff's replacement.

In addition, NW Permanente's ultimate decision maker, Lucy Andersen, testified to an entirely different reason for the termination at her deposition, claiming that Ms. Schultz's prior absences (which in fact were protected by FMLA/OFLA and the ADA) and her allegedly poor job performance prompted Andersen's decision to terminate Ms. Schultz.

### III. DISCUSSION

**A.    The Court Should Decide Plaintiff's Claims for OFLA Leave Retaliation and Sick Leave Interference and Retaliation in Plaintiff's Favor, and the Jury Should Decide the Same for Plaintiff's FMLA Claim.**

After the Court's Order on Defendant's Motion for Summary Judgment ("MSJ"), Plaintiff has claims under Oregon law for Oregon Family Leave Act ("OFLA") Interference/Retaliation, Oregon Sick Leave Act ("OSLA") Interference, and OSLA Retaliation. Under Oregon law, claims under both OFLA and OSLA are tried to the bench and not a jury. *See* ORS 659A.885(1)(a) ("The judge shall determine the facts in an action under this subsection[.]"); ORS 659A.885(3) (delineating causes of action for which a party may request a jury trial but omitting ORS 653.641 and ORS 659A.183). Thus, the Court will ultimately determine whether Plaintiff can establish the elements of her Counts Five, Six and Seven.

Subjecting an employee to negative consequences for using OFLA is considered unlawful "interference" with medical leave. *Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003). "A majority of decisions in the District of Oregon . . . have concluded that the OFLA includes a cause of action for interference." *Stillwell v. Old Dominion Freight Line*, No. 3:19-cv- 1789-SI, 2021

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

WL 3056375, at *6 (D. Or. Jul. 20, 2021). "[A]n OFLA claim rooted in facts constituting an interference claim under the FMLA also may be properly brought as an interference claim under the OFLA." *Id.*

To establish an actionable interference claim, a plaintiff must show that her use or attempted use of protected leave was a "negative factor" in the decision to take adverse action against him. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). Burden-shifting does *not* apply to an interference claim. *Id*. at 1125. Like OFLA, OSLA "prohibits employers from interference, discrimination, or retaliation for taking sick leave." *Schultz v. NW Permanente P.C.*, No. 3:20-CV-00626-IM, 2020 WL 4261273, at *3 (D. Or. July 23, 2020).

In this case, the evidence will show that Defendant's decision-makers have conceded to— they have provided direct evidence of—hostility toward Plaintiff for taking medical leave. As Andersen testified, Plaintiff's need for medical leave was frustrating, stressful, and upsetting to her. Additionally, Andersen put Plaintiff on a Work Development Plan that specifically disciplined her for using protected leave protected by OFLA and for her symptoms of disability. It is well-established that interference and retaliation can occur after a Plaintiff returns from protected leave. *See Schultz*, 970 F. Supp. 2d at 1055-56. This makes sense, especially in light of Andersen's testimony that Plaintiff's *prior* leaves factored into her decision to terminate.

The interference test asks simply whether the "taking of permissible leave was *a* negative factor, not *the only* factor." *Stillwell*, 2021 WL 3056375 *17. Andersen's testimony is more than enough for the Court to conclude that Plaintiff's past leaves, that were protected by OFLA and OSLA, were a negative factor in the termination decision. As such, Plaintiff's interference claims should succeed at trial. Although the jury will decide Plaintiff's Count Ten, for FMLA Interference, the same evidence and the analysis will lead the jury to the same conclusion.

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

**B.      The Jury Should Decide in Plaintiff's Favor on Her State and Federal Claims for Failure to Accommodate a Disability.**

1.      The Evidence That Defendant Failed to Engage in the Interactive Process to Provide Accommodations Is Uncontested.

Both ORS 659A.112 and 42 U.S.C. § 12112 prohibit an employer from failing to make a reasonable accommodation for the known disability of a qualified individual. Plaintiff's Count Two is for failure to accommodate based on ORS 659A.112 and Plaintiff's Count Nine encompasses a failure to accommodate theory under 42 U.S.C. § 12112. The evidence will support a jury finding in Plaintiff's favor on both theories.

The interactive process is triggered "either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Barnett*, 228 F.3d at 1112. An employee does not need to mention the ADA or use any particular language when requesting an accommodation; the employee can simply inform the employer of a need for adjustment due to a medical condition. *Id.*; *see also Hoang v. Wells Fargo Bank, N.A.*, 724 F. Supp. 2d 1094, 1101 (D. Or. 2010).  Here, Plaintiff made both her lead April Rice and her manager Lucy Anderson aware of her disability in June of 2019.  At that time, she informed both about the extent of her mental health condition and need for treatment.  Yet, neither engaged in the requisite interactive process with her nor did they refer her to anyone else at the employer who could. Indeed, the company offers zero written guidance to employees on how to navigate the interactive process or reasonable accommodation at Northwest Permanente.

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation . . . to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (emphasis added).

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

The ADA, at its core, requires an employer to engage in the interactive process when there is either a request from the employee or awareness by the employer that the employee needs an accommodation. The desire for accommodation is implicit when the employee expresses the need for an accommodation. No additional magical words of desire are necessary[.]

*Dunlap v. Liberty Nat. Prod., Inc.*, No. 3:12-CV-01635-SI, 2015 WL 1778477, at *8 (D. Or. Apr.

20, 2015), *aff'd*, 878 F.3d 794 (9th Cir. 2017).

"The interactive process is the key mechanism for facilitating the integration of disabled

employees into the workplace. Employers who reject this core process must face liability when a

reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105,

1116 (9th Cir. 2000), *vacated sub nom. on other grounds*, *US Airways, Inc. v. Barnett*, 535 U.S.

391 (2002).

When an individual with a disability has requested a reasonable accommodation to assist in the performance of a job, the employer, using a problem solving approach, should:

(1) Analyze the particular job involved and determine its purpose and essential functions;

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

29 C.F.R. Pt. 1630, App. § 1630.9; *see also Barnett*, 228 F.3d at 1114 (approvingly citing EEOC

steps above).

[T]he duty to accommodate "is a 'continuing' duty that is 'not exhausted by one effort.'" . . . [T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed.

*Humphrey*, 239 F.3d at 1138 (citations omitted).

The evidence will demonstrate that Plaintiff was a qualified individual with a disability and had given Defendant adequate notice of her disability and desire for a reasonable accommodation. Plaintiff will also be able to prove that there were multiple reasonable accommodations that could have enabled her to perform the essential functions of her job, including working from home, using a short period of additional unpaid leave to accommodate her mental health disability, and potentially transferring to another position.

On the other hand, there is no evidence—and thus Defendant will not be able to prove— that it engaged in any of the steps required by the interactive process. It did not analyze Plaintiff's particular job and its functions in light of her requested accommodations. It did not consult with Plaintiff to determine the precise job-related functions affected by her disability. It identified no potential accommodations whatsoever. And, of course, it did not take Plaintiff's preference for an accommodation into account. There is persuasive, uncontradicted evidence that Plaintiff would have benefited from at least two accommodations: (1) the option to work from home; and (2) the option to use a short additional period of unpaid leave for approximately two weeks.

But instead of granting either of these accommodations, Defendant responded to Plaintiff's requests by issuing an unqualified denial of her request, seeking no further discussion from Plaintiff. It proposed no alternate accommodations. It then fired Plaintiff. Defendant's liability will be clear.

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

2.    There is Little If Any Evidence to Support Defendant's Defense of "Undue Hardship" and the Jury Should Reject the Defense.

To avoid liability for failing to make a reasonable accommodation, Defendant has the burden of proving that the disability accommodation would cause an undue hardship. *Barnett,* 228 F.3d at 1113 ("The ADA's reasonable accommodation requirement puts the burden on the employer to show that a proposed accommodation will cause undue hardship."); *see also* 42 U.S.C. § 12112(b)(5)(A) (An employer violates the ADA by "not making reasonable accommodations. . . unless such *covered entity can demonstrate* that the accommodation would impose an undue hardship on the operation of the business of such covered entity.") (emphasis added). An undue hardship is "an action requiring significant difficulty or expense[.]" 42 U.S.C. § 12111(10)(A).

The ADA does not allow an employer to simply throw up its hands in despair when it becomes frustrated by an employee's accommodation request. Nor can its agents summarily conclude that the hardship would be too great. Instead, Defendant is required to engage in a methodical analysis of multiple factors, most of which focus on financial costs and resources. These factors are:

> (i) the nature and cost of the accommodation needed under this chapter;
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

42 U.S.C. § 12111(10)(B).

Under the ADA, an employer *cannot* demonstrate that an accommodation poses an "undue hardship by showing that the provision of the accommodation has a negative impact on the morale of its other employees[.]" 29 C.F.R. Pt. 1630, App. § 1630.15(d).

Further, according to the EEOC:

> The ADA's legislative history indicates that Congress wanted employers to consider all possible sources of outside funding when assessing whether a particular accommodation would be too costly.(115) Undue hardship is determined based on the net cost to the employer. Thus, an employer should determine whether funding is available from an outside source, such as a state rehabilitation agency, to pay for all or part of the accommodation.(116) In addition, the employer should determine whether it is eligible for certain tax credits or deductions to offset the cost of the accommodation. Also, to the extent that a portion of the cost of an accommodation causes undue hardship, the employer should ask the individual with a disability if s/he will pay the difference.

Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA, October 17, 2002, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.

In this case, there is evidence that Defendant had funding available from its affiliated entity, Kaiser Foundation Hospitals, to help defray costs related to Plaintiff's position. Despite this, the evidence will indicate that Defendant did not engage in any analysis required by the factors of 42 U.S.C. § 12111(10)(B). Nor will it be able to prove to the jury that those factors would have been met, especially given its substantial available resources. Instead, Defendant has failed to establish that the two accommodations clearly available in this case would have caused it undue hardship under any of these factors. The stipulated facts, and the facts the jury will see, indicate that Defendant would have suffered zero hardship whatsoever had it kept Plaintiff's position open during an extended leave for up to eight months.

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

**C.** **The Evidence Also Supports the Jury Finding Defendant Liable on Plaintiff's Claims for Disparate Treatment Disability Discrimination.**

Plaintiff's Counts One and Nine include claims for disparate treatment discrimination under the ADA and its Oregon counterpart. Plaintiff has set forth sufficient evidence to make out a prima facie case of disability discrimination under a disparate treatment theory. To establish a prima facie case under ADA and Oregon law, Plaintiff must show she "(1) is disabled or perceived as such; (2) is a qualified individual, meaning [she] is capable of performing the essential functions of the job; and (3) suffered an adverse employment action because of [her] disability." *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 963 (D. Or. 2011); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (stating same standard under Oregon law). Defendant does not dispute that Plaintiff is an individual with a disability.

Plaintiff was qualified because she had been working for the organization without incident for 15 years and for almost two years in the final position she held. Although Plaintiff was briefly unable to fulfill her job duties while she needed medical leave, she was nonetheless a qualified individual because an accommodation of additional leave time was reasonable and would plausibly have allowed her to continue doing the essential functions of her job.

Finally, Plaintiff suffered clear incidents of adverse action: she was subjected to a "Work Development Plan" and extraordinary criticism in her daily work, while in the midst of taking leave for her disabilities, and ultimately terminated from employment by Defendant. As such, Plaintiff will be able to prove she was subject to disparate treatment disability discrimination.

**D.** **Plaintiff's Evidence Will Support the Jury Finding in Her Favor on Her Disability-Related Retaliation Claim.**

Plaintiff's Count Three is claim for retaliation under Oregon law, which prohibits adverse actions against an employee because they have "applied for benefits or invoked or used the

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

procedures" of Oregon's disability law, including requesting accommodations. ORS 659A.109. A prima facie disability retaliation case requires Plaintiff to show: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009). For retaliation claims, an action is adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

Plaintiff can easily demonstrate retaliation. She requested medical leave in 2019 and immediately began to suffer adverse actions—additional work duties, extraordinary criticism, the loss of her work from home privileges, and ultimately written discipline premised partly on her use of leave for her disabilities. Later, when she again requested accommodation, specifically under the ADA, Defendant responded by terminating her employment. Defendant claims it fired Plaintiff not for this reason, but because it could not leave her position unfilled. For the reasons noted above sections, this explanation is unworthy of credence. Defendant failed to fill the position for months.

Finally, the repeated litany of admissions by Andersen that she was frustrated, stressed, and growing impatient with Plaintiff's use of medical leave are sufficient to demonstrate to the jury that Defendant's motives were unlawful.

**E.      Plaintiff's Wrongful Discharge Claim Based on Violations of FMLA, OFLA and OSLA Should Also Lead to a Finding of Defendant's Liability by the Jury.**

Plaintiff has produced sufficient evidence to prevail on her claim for wrongful discharge for the same reasons as she has on her claims under FMLA, OFLA, and OSLA. "[A] complaint that includes an allegation that the plaintiff was discharged in retaliation for invoking her rights under OFLA states a claim for common-law wrongful discharge." *Yeager v. Providence Health*

MEYER STEPHENSON
1 SW COLUMBIA ST., STE. 1850
PORTLAND, OR 97204
VOICE: (503) 459-4010
FAX: (503) 512-5022

*Sys. Oregon*, 195 Or. App. 134, 142-43 (2004). The "statutory remedies under FMLA and OFLA do not preempt a wrongful-discharge claim under Oregon law because they do not authorize an award of general or non-economic damages for emotional distress[.]" *Pacosa v. Kaiser Found, Health Plan of the NW*, No. 09-cv-1137-BR, 2011 WL 208205 *14 (D. Or. 2011) (internal quotation marks omitted).

Like OFLA and FMLA, OSLA also does not authorize general or non-economic damages. *See* ORS 659A.885(3) (omitting OFLA (ORS 659A.183) and OSLA (ORS 653.641) claims from remedial provision providing for compensatory or punitive damages). In *Holien v. Sears, Roebuck & Co.*, the Oregon Supreme Court held that a plaintiff in Oregon who claims damages for emotional distress related to their termination does not have adequate statutory remedies available unless the statute in question allows for noneconomic damages. 298 Or. 76, 97 (1984). Thus, the jury will be able to conclude that Plaintiff's meritorious claims under FMLA, OFLA, and OSLA, support a finding for Plaintiff on her Wrongful Discharge claim under Oregon law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff is likely to prevail on all of her claims for relief at trial and her prayer for economic, non-economic, and punitive damages. Plaintiff is also entitled to recover prevailing party attorneys' fees and costs if she prevails on any of her statutory claims.

DATED:          February 3, 2021                    Respectfully Submitted:

MEYER STEPHENSON

*s/ Robert K. Meyer*
Robert K. Meyer, OSB No. 086470
robert@oregonworkplacelaw.com
Michael Owens, OSB No. 104720
mike@oregonworkplacelaw.com

1 SW Columbia St., Ste. 1850
Portland, OR 97204
Voice: (503) 459-4010
Fax: (503) 512-5022

*Attorneys for Plaintiff*

**PLAINTIFF'S TRIAL MEMORANDUM**