IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELA SCHULTZ**, | Case No. 3:20-cv-00626-IM |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **NW PERMANENTE P.C.**, an Oregon limited liability company and abn **NW PERMANENTE PHYSICIANS AND SURGEONS P.C.**, | |
| Defendant. | |

Robert K. Meyer, Christina E. Stephenson, and Michael V. Owens, Meyer Stephenson, 1 SW Columbia Street, Suite 1850, Portland, OR 97258. Attorneys for Plaintiff.

Alexander H. Hill and Jeanne F. Loftis, Bullivant Houser Bailey P.C., 1 SW Columbia Street, Suite 800, Portland, OR 97258. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This matter came before the Court on a mixed bench and jury trial, held from February 22, 2022 to February 25, 2022. The jury returned a verdict for Plaintiff Angela Schultz on the following claims: disability discrimination (Count One[1]), failure to accommodate (Count Two),

---

[1] Plaintiff brought claims for disability discrimination under Oregon law (Count One) and the Americans with Disabilities Act (Count Nine). This Court granted summary judgment and

PAGE 1 – OPINION AND ORDER

disability retaliation (Count Three), Family Medical Leave Act ("FMLA") (Count Ten), and wrongful discharge (Count Eight). ECF 90. On the FMLA claim, the jury found that Plaintiff's use of FMLA leave was a negative factor in Defendant Northwest Permanente's decision to terminate her, but not in its decision to no longer allow her to telecommute or to put her on a work development plan ("WDP"). *Id*. at 3.

Now this Court must decide Plaintiff's remaining claims under the Oregon Family Leave Act ("OFLA") (Count Five) and Oregon Sick Leave Act ("OSLA") (Counts Six and Seven), which are tried to the bench rather than a jury.[2] Also before this Court are Defendant's motion for directed verdict as to the FMLA (Count Ten) and wrongful discharge (Count Eight) claims, ECF 95 at 10–14, and Plaintiff's motion for a tax offset, prejudgment interest, and reconsideration of a liquidated damages award, ECF 97. This Court first addresses the bench-tried claims and then turns to the parties' motions.

Based on the evidence presented at trial in this matter, this Court finds that Plaintiff's use of OFLA and OSLA leave was not a negative factor in Defendant's decision to take adverse employment action against her and, accordingly, finds in Defendant's favor on the OFLA and OSLA claims. In addition and for the same reasons, this Court GRANTS Defendant's motion for judgment as a matter of law on the FMLA and wrongful discharge claims. Finally, this Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for a tax offset, prejudgment interest, and reconsideration of a liquidated damages award. This Court finds that Plaintiff is entitled to a tax offset and prejudgment interest, but orders the parties to confer and recalculate

---

dismissed Count Nine insofar as it was based on a hostile work environment theory. ECF 47 at 1–2. Disability discrimination was then presented to the jury as a single count. *See* ECF 86 at 8 (jury instruction on disability discrimination); ECF 90 at 2 (jury verdict on disability discrimination).

[2] Plaintiff also conceded summary judgment on OFLA denial. ECF 47 at 1.

PAGE 2 – OPINION AND ORDER

the appropriate amount in light of Plaintiff's married tax-filing status. Because directed verdict has been entered in Defendant's favor on the FMLA claim, Plaintiff is not entitled to liquidated damages.

## FINDINGS OF FACT

1. Plaintiff Angela Schultz was hired by Defendant Northwest Permanente as a Medical Education Program Coordinator on or about May 21, 2018.

2. During her employment with Defendant, Plaintiff was supervised by Lucy Andersen and April Rice.

3. In June 2019, Plaintiff notified Ms. Andersen that she had a mental health disability. On or about June 18, 2019, Plaintiff submitted an FMLA request for foot surgery. This request also fell under the OFLA. Plaintiff estimated that she would be absent from work from July 17, 2019 through August 17, 2019. Defendant approved this leave and Plaintiff's leave started on July 17, 2019.[3]

4. On or about June 24, 2019, Plaintiff submitted a request under FMLA and OFLA for intermittent leave related to a diagnosis of major depression. Plaintiff estimated that her leave would be up to twice a week for four hours per episode. Defendant approved the intermittent leave request.

5. On September 9, 2019, Plaintiff returned to work from her foot surgery.

---

[3] Although Plaintiff formally requested time off for her foot surgery in June, she had first informed Ms. Andersen and Ms. Rice that she needed surgery in February 2019. At that time, Plaintiff asked Ms. Andersen if she could work from home after her foot surgery; Ms. Andersen said that she could. At that time, Plaintiff was telecommuting one half-day per week. On or about June 1, 2019, Plaintiff was informed that she would no longer be able to telecommute.

PAGE 3 – OPINION AND ORDER

present at work, and that her absences, lack of communication, and the mistakes she was making were causing strain on the department.

17. Defendant's Human Resources Department advised Ms. Andersen that Plaintiff's request for additional leave from January 21, 2020 through February 21, 2020 was not a reasonable accommodation and advised that termination was an appropriate response if Plaintiff did not return to work by February 3, 2020.

18. Plaintiff's doctor did not clear her to return to work on February 3, 2020.

19. Plaintiff did not return to work on February 3, 2020 and was notified by email that day that her employment had been separated effective that day.

## CONCLUSIONS OF LAW

### A. Legal Standards

OFLA "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal [FMLA]." O.R.S. 659A.186(2). Thus, to show OFLA interference "a plaintiff must show by a preponderance of the evidence that h[er] use of [OFLA]-protected leave was a negative factor in defendant's [adverse employment decision]." *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 952–53 (D. Or. 2011) (internal quotation marks and citation omitted).

OSLA makes it unlawful for an employer to deny, interfere with, retrain, or fail to pay an employee for sick time to which they are entitled, ORS 653.641(1), or to retaliate or discriminate against an employee for inquiring about, requesting, or taking sick time, ORS 653.641(2). Plaintiff submitted a jury instruction, to which Defendant did not object, which provided: "[OSLA] Interference occurs when an employer considers the use of OSLA leave as a negative

factor in an adverse employment action. It does not have to be the only factor." ECF 92-2, Ex. 2, at 2.[4]

## B. Analysis

Plaintiff alleges that Defendant took adverse employment action against her by (i) revoking Plaintiff's ability to telecommute; (ii) placing Plaintiff on a WDP; and (iii) terminating Plaintiff's employment. *See* ECF 89 at ¶ 7 (adverse employment actions on FMLA claim).[5]

### 1. Telecommuting

Plaintiff has not established that her taking OFLA or OSLA leave was a negative factor in Defendant's decision to take away her ability to telecommute. Plaintiff and Ms. Andersen both testified that a telecommute agreement was a written agreement at the discretion of the supervisor. Plaintiff had never been permitted to telecommute for more than one half-day per week. While Plaintiff informally told Ms. Andersen in January 2019 that she would be taking protected leave

---

[4] Plaintiff did not submit a separate jury instruction on OSLA retaliation/discrimination. Defendant urges this Court to finds that Plaintiff has thus waived her OSLA retaliation/discrimination claim. ECF 95 at 7. This Court disagrees. Because this Court finds that Plaintiff's use of sick time was not *any* factor in Defendant's adverse employment decision, this Court can decide the OSLA retaliation/discrimination claim without an additional instruction from Plaintiff. Moreover, this Court notes that Defendant did not raise the argument that there should be separate instructions for OSLA denial/interference and OSLA retaliation/discrimination when Plaintiff filed her initial instructions, so this Court finds that Defendant waived the argument.

[5] Plaintiff argues that, because the jury found in her favor on the FMLA claim, this Court *must* find in her favor on the OFLA claim. Specifically, Plaintiff urges that "where the legal claims tried by the jury and the equitable claims tried by the court are based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." *Id*. at 7 (internal quotation marks omitted) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011). But Plaintiff is estopped from making this argument because she had previously argued that "[t]he judge shall determine the facts in" an OFLA or OSLA claim. ECF 56 at 8 (internal quotation marks omitted) (quoting ORS 659A.885(1)(a)).Further, as explained in this Opinion, this Court finds that there was insufficient evidence for a reasonable jury to find for the Plaintiff on the FMLA claim, and therefore the jury's determination on that claim does not require this Court to find for Plaintiff on the OSLA/OFLA claims.

PAGE 6 – OPINION AND ORDER

for foot surgery in July 2019 and asked if she could telecommute, Plaintiff never formally requested to telecommute five days per week during her recovery and did not obtain a written agreement to that effect. Moreover, Ms. Andersen did not revoke Plaintiff's ability to telecommute until June 1, 2019; the five-month gap between Plaintiff's informal request and Ms. Andersen's revocation of her ability to telecommute does not provide a temporal link between the request and the revocation.

Plaintiff testified that Ms. Andersen revoked her ability "because of [her] mental illness." ECF 110 at 21. But Plaintiff also testified that, around the time her ability to telecommute was revoked, "there was concern about [her] ability to do the job." *Id*. at 64. Indeed, Ms. Andersen testified that Plaintiff's ability to telecommute was revoked because she was making mistakes in her work and Defendant needed "to stop the telecommuting so that we can do some training and really support [Plaintiff] and get her back on track." ECF 111 at 26; *see also id*. at 68 ("[T]hat's when Ms. Rice began to find errors in [Plaintiff's] work . . . [a]nd subsequently to that [Ms. Andersen] took away Ms. Schultz's right or privilege or ability to telecommute."). Ms. Andersen added that Plaintiff did not mention her mental health when her telecommuting ability was revoked. *Id*. at 69. Ms. Rice also testified that Plaintiff's ability to telecommute was revoked in June because she had "been working with [Plaintiff] on kind of an outline of helping her get back on track and get her kind of retrained into the program coordinator position . . . and we decided it would be best, if she was in the office all the time, instead of away from the office, so we could make sure she was staying on top of her work." *Id*. at 120.

Plaintiff was never entitled to work from home every day of the week. Even if Ms. Andersen told Plaintiff informally that she could do so during her recovery from foot surgery, Plaintiff never had that agreement memorialized in writing. No matter what, at Northwest Permanente telecommuting was at the supervisor's discretion. Plaintiff testified that, when her

PAGE 7 – OPINION AND ORDER

ability to telecommute was revoked in June 2019, there were concerns about her work product; indeed, Ms. Andersen and Ms. Rice both testified that they wanted Plaintiff to work in person so that she could be retrained. Plaintiff only testified that she believed the revocation was because of her mental health—her disability—rather than her having taken sick time or leave—the predicate of an OSLA or OFLA claim. Accordingly, this Court finds that Plaintiff taking OSLA or OFLA leave was not a negative factor in Defendant's decision to revoke her ability to telecommute.

### 2. Work Development Plan

Plaintiff has not established that her taking OFLA or OSLA leave was a negative factor in Defendant's decision to put her on a WDP. This is a closer issue than Plaintiff's ability to telecommute because the WDP explicitly references Plaintiff's absences on October 16–18, 2019.[6] Ex. 508. Plaintiff testified that "part of the discipline was related to [her] being unable to work on October 16 through 18." ECF 110 at 36. But a holistic review of the WDP shows that it was Plaintiff's mistakes and communication issues, rather than the absences themselves, that prompted the WDP. Just after referencing Plaintiff's three-day absence, the WDP notes that Ms. Andersen had contacted Plaintiff to see if there were "urgent matters or upcoming meetings that [she] could help [Plaintiff] with in [her] absence." Ex. 508. Although there was a conference scheduled during Plaintiff's absence for which she was responsible, she did not mention this to Ms. Andersen until she was asked about it explicitly. *Id*. Indeed, the WDP explicitly contemplated that there would be no issue with unplanned absences as long as Plaintiff "contact[ed] Lucy

---

[6] Defendant argues that because these dates were coded as "sick" or "ZEROT," they are unrelated to OFLA. ECF 91 at 4 (citing Ex. 179). This Court disagrees with that framing. Although the specific days referenced in the WDP were not covered by OFLA, the parties agree that Plaintiff *did take* OFLA-protected leave. Given that the WDP then references Plaintiff's absences, this Court cannot simply conclude that the references to sick time, rather than OFLA leave, are dispositive.

PAGE 8 – OPINION AND ORDER

[Andersen] and April [Rice] two hours before the start of [her] shift and communicate[d] priority/urgent work for adequate cross coverage." *Id*. The rest of the document does not reference absences at all, and instead details mistakes made by Plaintiff, the impact they were having on the rest of the team to re-do her work, and remedial steps Plaintiff was expected to take. *Id*. The WDP did not criticize Plaintiff for being absent; it pointed out that communication surrounding her absences had been lacking and delineated a broader pattern of mistakes that were causing added work for Plaintiff's colleagues.

Credible testimony elicited at trial supports a finding that Defendant was not holding Plaintiff's absences under OFLA or OSLA against her in crafting the WDP. Christy Daniels testified that Ms. Andersen was not "frustrated with the requests for leave, but the – more so the impact that it [was] having on the department." ECF 110 at 195–96. Ms. Daniels explicitly disclaimed that Plaintiff was being disciplined for being absent: "The discipline was not for the absence. Really, what the discipline was is the impact that . . . Ms. Schultz's lack of communication caused to . . . the department." *Id*. at 210–11.[7]

This Court acknowledges that Ms. Andersen's testimony referenced Plaintiff's absences, but does not find that Ms. Andersen's testimony gives rise to the inference that she held those absences against Plaintiff. Ms. Andersen stated that there were "[l]ots of absences and – and I did not want to impact Ms. Rice in that way – to continue to expect her to do, essentially, two jobs." ECF 111 at 53. But Ms. Andersen then said that "[Ms. Rice] was still [doing] lots of support and training with Ms. Schultz, and so I was kind of exploring ideas about, 'Can we get somebody else

---

[7] This Court also notes that Ms. Daniels testified to FMLA leave being "protected," meaning that the "employer cannot take any sort of adverse or disciplinary action against the employee for anything that occurs during that period of time off." *Id*. at 199. Because only the FMLA claim was tried to the jury, neither Ms. Daniels nor any other defense witness testified about their understanding of OFLA/OSLA protections.

PAGE 9 – OPINION AND ORDER

in here?'" *Id*. Ms. Andersen also testified that the issue she had with Plaintiff's absences in October 2019 was that "[s]he took no initiative with April or I on what needed attention. So . . . she was communicating that she was not going to be there, but she didn't communicate on what needed to be taken care of in her absence." *Id*. at 88. When asked if she was upset about the absences, Ms. Andersen responded, "Oh, no. not at all. Again, worried about her, but also worried about the work getting done." *Id*.

This Court finds that Plaintiff has not proven that Defendant considered her use of OFLA or OSLA leave as a negative factor in putting her on a WDP. Both the WDP itself and the testimony at trial support a finding that, while Defendant was *aware* of Plaintiff's absences, it accepted the absences themselves as long as Plaintiff was communicating with her supervisors to ensure adequate coverage.

### 3. Termination

Defendant terminated Plaintiff's employment after she requested a leave extension from January 21, 2020 to February 21, 2020. But at that point, Plaintiff had exhausted her OFLA and OSLA leave. *See* Ex. 179 (OSLA leave exhausted as of January 13, 2020); Ex. 515 (FMLA and OFLA leave exhausted as of December 31, 2019). Even if Defendant's decision to terminate Plaintiff stemmed from her requested extension to continue treatment for her mental health disability, the decision falls under the ambit of the Americans with Disabilities Act's ("ADA") accommodations requirement, but not under FMLA, OFLA, or OSLA.

As to Plaintiff's argument that Defendant terminated her employment after she requested an extension under the ADA but did so because she had taken OFLA or OSLA leave, the same analysis detailed above applies here. There is simply no credible evidence to support that theory. Defendant's employees consistently testified that they were frustrated not with Plaintiff's absences under OFLA and OSLA but with her failures of communication and consistent mistakes

PAGE 10 – OPINION AND ORDER

increasing the burden on other employees. In addition, Ms. Daniels testified that Plaintiff was terminated because Defendant "could not extend her personal leave of absence [and] it was [Defendant's] understanding that nothing could be done other than additional time." ECF 110 at 217. Again, this implicates the ADA accommodations process rather than Defendant's view of Plaintiff's OFLA and OSLA absences. To that end, Ms. Andersen responded in the negative when asked if she "consider[ed] [Plaintiff's] taking FMLA or protected leave in part of [her] decision-making to terminate her." ECF 111 at 99. Finally, Tammy Kilmer testified that she "advised Ms. Andersen of the medical documentation [relating to Plaintiff's leave extension request] that was received and also what our recommendation [was] with her leave. . . . My recommendation was that the leave was not a reasonable accommodation." *Id*. at 181.

This Court finds that Plaintiff has not proven that Defendant considered her use of OFLA or OSLA leave as a negative factor in its decision to terminate Plaintiff's employment. This Court notes that its findings do not overturn the jury's verdict in Plaintiff's favor on her disability discrimination, failure to accommodate, or disability retaliation claims. There is no inconsistency between this Court's finding that Defendant did not hold Plaintiff's OSLA or OFLA leave against her and the jury's finding that Defendant discriminated against Plaintiff for the symptoms and manifestations of her major depressive disorder—for example, her lapses in focus or mistakes made on her work. Accordingly, this Court finds in favor of Defendant as to the OFLA and OSLA claims in the complaint.

## ADDITIONAL MOTIONS

### A. Defendant's Motion for Directed Verdict on the FMLA and Wrongful Discharge Claims

#### 1. Standards

A court may grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally

PAGE 11 – OPINION AND ORDER

sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). This Court reserved ruling on Defendant's motion for judgment as a matter of law at trial, and Defendant properly renewed that motion within 28 days after the jury was discharged. *See* Fed. R. Civ. P. 50(b).

To establish an actionable FMLA interference claim, a plaintiff must show that their use or attempted use of protected leave was a negative factor in the employer's decision to take adverse action against them. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001).

Under Oregon law, "[a]n employee may bring a claim for wrongful discharge 'when the discharge is for exercising a job-related right that reflects an important public policy.'" *Carter v. Fred Meyer Jewelers, Inc.*, No. 3:16-cv-00883-YY, 2019 WL 2744190, at *9 (D. Or. Apr. 10, 2019) (quoting *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 140 (2004)). A plaintiff's "allegation that [s]he was terminated for taking [statutorily protected] leave serves as a [proper] basis for a wrongful discharge claim." *Id*. at *12. Thus, Plaintiff argues, "[i]f there is a finding for Plaintiff's claims under FMLA, OFLA, or OSLA, Plaintiff has also stated a wrongful discharge claim under Oregon law." ECF 101 at 13.[8]

---

[8] Defendant argues that Plaintiff's wrongful discharge claim should have never gone to the jury. ECF 95 at 10–11. Defendant bases this argument on a statement from Plaintiff's counsel at trial that wrongful discharge "is a similar claim, but it encompasses a little bit more than the FMLA claim because it is a – encompassing [OSLA] and [OFLA], which is basically identical to FMLA, but it does cover the Sick Leave Act as well. So the sick time is covered under wrongful discharge." *Id*. at 11 (internal quotation marks omitted) (quoting ECF 111 at 236). This Court then asked, "But not under the FMLA?" And Plaintiff's counsel answered, "But not under the FMLA claim." *Id*. (internal quotation marks omitted) (quoting ECF 111 at 236). Defendant misconstrues Plaintiff's counsel's statement, which this Court understood to mean that the wrongful discharge claim encompasses OSLA violations while the FMLA claim does not. This Court did not understand Plaintiff's counsel to assert that the wrongful discharge claim does not encompass FMLA violations. *See Carter*, 2019 WL 2744190, at *12 (finding that the allegation

PAGE 12 – OPINION AND ORDER

### 2. Analysis

The parties agree that OFLA and FMLA claims are construed in the same manner. At trial, Plaintiff argued thar her use of protected leave was a negative factor in Defendant's decision to revoke her ability to telecommute, place her on a work development plan, and terminate her employment. The jury only found FMLA interference as to Plaintiff's termination, ECF 90 at 3, and so Defendant's motion for directed verdict only requires this Court to consider directed verdict on that adverse employment action.

For the reasons stated above, this Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff on whether her use of FMLA was a negative factor in Defendant's decision to terminate her employment. Defendant's employees consistently testified that they viewed FMLA leave as "protected" and did not consider Plaintiff's use of leave in their decision to terminate her—or take any other adverse employment actions. Those same employees did testify, however, that they considered Plaintiff's work mistakes— allegedly a byproduct of her mental health disability—and her request for a leave extension in January and February 2020—a potential ADA accommodation—in their termination decision. While the jury found that Defendant had discriminated and retaliated against Plaintiff for her disability and failed to accommodate her, the evidence does not reasonably support finding that Defendant negatively considered Plaintiff's FMLA-related absences in terminating her employment. Accordingly, this Court grants Defendant's motion for judgment as a matter of law on Plaintiff's FMLA claim.

---

of termination for taking OFLA *and FMLA* leave "serves as a basis for a wrongful discharge claim").

Because this Court has found in Defendant's favor on the OSLA and OFLA claims and granted Defendant's motion for judgment as a matter of law on the FMLA claim, judgment as a matter of law is also appropriate on the wrongful discharge claim. As Plaintiff concedes, the wrongful discharge claim here requires as a predicate liability on at least one of the OFLA, OFLA, or FMLA statutory claims. ECF 101 at 13 ("If there is a finding for Plaintiff's claims under FMLA, OFLA, or OSLA, Plaintiff has also stated a wrongful discharge claim under Oregon law.").

## B. Plaintiff's Motion for Tax Offset, Prejudgment Interest, and Reconsideration of a Liquidated Damages Award

### 1. Tax offset

Plaintiff argues that she is entitled to a tax offset to because she will incur increased tax liability if her economic damages are paid a lump sum rather than over the normal course of employment. ECF 97 at 2–3. Plaintiff relies on recent Ninth Circuit precedent in the Title VII context, in which the court upheld a "gross up" to compensate for increased tax liability. *Id*. (citing *Clemens v. CenturyLink, Inc.*, 874 F.3d 1113, 1115–16 (9th Cir. 2017). Defendant argues that Plaintiff is judicially estopped from arguing that Title VII remedies apply in the context of her ADA claim because Plaintiff had argued before that Title VII law on undue hardship does not control in an ADA case. ECF 106 at 2. This Court disagrees. As Plaintiff points out, the "powers, remedies, and procedures set forth in [Title VII of the Civil Rights Act of 1964] shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability." 42 U.S.C. § 12117; *see* ECF 97 at 3. Indeed, Defendant even "concedes that Plaintiff's argument regarding comparisons of the ADA to Title VII were limited to the undue hardship defense and whether a *de minimis* impact was sufficient or not under the ADA." ECF 106 at 2 n.1. Nor did this Court make any ruling adverse to Defendant

PAGE 14 – OPINION AND ORDER

based on Plaintiff's argument, instead ruling that the parties' agreed-upon undue hardship instruction controlled and that undue hardship was a question for the jury. ECF 111 at 229.

As noted above, the Ninth Circuit has authorized tax offset gross-ups to account for potential increased backpay awards in the Title VII context. *See Clemens*, 874 F.3d at 1115–16. The Ninth Circuit also held that, while a prevailing plaintiff is not "presumptively entitled to an additional award to offset tax consequences," the decision of whether to award a gross-up and in what amount "is left to the sound discretion of the trial court." *Id*. at 1117; *see also Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440–43 (3d Cir. 2009) ("[A] district court may, pursuant to its broad equitable powers granted by [42 U.S.C. § 2000e-5], award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create.").

Defendant challenges Plaintiff's expert's calculations of her increased federal tax liability. ECF 106 at 3–6. Plaintiff's expert, Dr. Torrelli, offers two calculations because the jury did not explain how it apportioned the economic losses between salary and benefits. ECF 100-1, Ex. 1, at 2. The first calculation assumes that the jury awarded Plaintiff about two years of lost *salary*, while the second assumes that the jury awarded Plaintiff about one year of lost *compensation* (i.e., salary plus benefits). *Id*. Dr. Torelli calculates the federal income tax consequences of the first scenario as $23,844 and the federal income tax consequences of the second scenario as $28,878. *Id*. at 8. Defendant argues that Dr. Torelli erred in his first calculation by assuming that the entire economic damages award was taxable and in his second calculation by inflating Plaintiff's salary without explanation. ECF 106 at 4–5. But Defendant does not dispute that *some* tax offset would be appropriate, instead arguing that "[b]ecause all the figures produced by Plaintiff are unreliable and are based in pure speculation and not in fact, the Court should deny Plaintiff's Motion for Tax Offset." *Id*. at 5. Nor does Defendant proffer an opinion, expert or otherwise, as to an appropriate

PAGE 15 – OPINION AND ORDER

tax offset amount. This Court finds that Plaintiff's backpay award will increase her tax liability and that a gross-up is appropriate. Furthermore, this Court finds that Dr. Torelli's first calculation is appropriate because it more accurately accounts for the time between Plaintiff's termination and the jury's verdict in this case. But this Court also notes that Dr. Torelli uses the "solo filers" tax bracket despite Plaintiff's tax returns reflecting "married filing jointly" status. *See* ECF 107-3, Ex. 3, at 1. Accordingly, this Court orders the parties to jointly propose a tax offset amount consistent with this Opinion within fourteen days of the issuance of this Opinion; if the parties cannot jointly agree to an amount, the parties shall file a single joint status report conveying their respective positions within fourteen days.

This Court also notes that Ms. Osborn's calculations of Plaintiff's state tax liability also rely on a solo filer status. ECF 99-1, Ex. 1, at 3. The parties should include a state tax calculation in their joint status report.

### 2. Prejudgment interest

Plaintiff's expert calculates the prejudgment interest at $1,128 under his first interpretation and at $1,168 under his second interpretation. ECF 100-1, Ex. 1, at 8. In line with the above finding, this Court determines that the prejudgment interest rate under Dr. Torelli's first interpretation is appropriate. Indeed, Defendant appears to concede that this amount is the appropriate prejudgment interest if this Court awards a gross-up. *See* ECF 106 at 8 ("Therefore, the most the Court should award to Plaintiff for prejudgment interest is $1,127.98.").

If the prejudgment interest amount, calculated in accordance with Dr. Torelli's first interpretation, has changed because of the re-calculation reflecting Plaintiff's proper tax filing status, the parties should note this in their joint status report.

   3. **Liquidated damages**

Because this Court has granted Defendant's motion for directed verdict on the FMLA claim, a liquidated damages award is not appropriate. Accordingly, Plaintiff's motion for reconsideration is denied.

## CONCLUSION

For the reasons stated in this Opinion, this Court finds that Defendant is not liable on the OSLA and OFLA claims tried to this Court. Further, this Court GRANTS Defendant's motion for judgment as a matter of law on the FMLA and wrongful discharge claims. ECF 95.

Plaintiff's motion for tax offset, prejudgment interest, and reconsideration of a liquidated damages award is GRANTED IN PART and DENIED IN PART. This Court awards Plaintiff a tax offset to be calculated in accordance with Dr. Torelli's first interpretation. *See* ECF 100-1, Ex. 1, at 2–4. Parties must submit a joint status report recalculating the tax offset according to Plaintiff's proper tax filing status within fourteen days of the issuance of this Opinion. If the parties cannot agree on the proper amount, their respective calculations must appear in a single filing. Similarly, this Court awards Plaintiff prejudgment interest in accordance with Dr. Torelli's first interpretation, to be re-calculated as appropriate.

Finally, this Court DENIES Plaintiff's motion for reconsideration of the FMLA liquidated damages award. Because this Court set aside the jury's FMLA verdict, liquidated damages are unavailable to Plaintiff.

**IT IS SO ORDERED**.

DATED this 9th day of June, 2022.

/s/ Karin J. Immergut  
Karin J. Immergut  
United States District Judge