IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELA SCHULTZ**, <br><br>                 Plaintiff, <br><br>        v. <br><br> **NW PERMANENTE P.C.**, an Oregon limited liability company and abn **NW PERMANENTE PHYSICIANS AND SURGEONS, P.C.**, <br><br>                 Defendant. | Case No. 3:20-cv-00626-IM <br><br> **OPINION AND ORDER** |

**IMMERGUT, District Judge.**

     Before the Court are Plaintiff's motion for attorney's fees, costs, and postjudgment interest, ECF 119; Plaintiff's bill of costs, ECF 121; and Defendant's motion for judgment notwithstanding the verdict, ECF 135. Plaintiff's motions for fees and costs are GRANTED as modified by this order. Defendant's motion for judgment notwithstanding the verdict is DENIED.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

A jury trial was held on February 22–24, 2022. The jury returned a verdict for Plaintiff on her claims for disability discrimination, failure to accommodate, disability retaliation, Family Medical Leave Act ("FMLA") violations, and wrongful discharge, ECF 90, and awarded Plaintiff $87,000 in economic damages and $150,000 in noneconomic damages, *id*. at 4. On June 6, 2022, this Court issued an opinion finding that Defendant was not liable on Plaintiff's bench-tried claims for Oregon Family Leave Act ("OFLA") and Oregon Sick Leave Act ("OSLA") violations and granting Defendant's motion for directed verdict on the FMLA and wrongful discharge claims. ECF 114.

Plaintiff now requests $547,303.75 in attorney's fees, $5,937.50 in expert witness fees, $10,492.68 in costs, and postjudgment interest. ECF 119 at 2. Defendant objects and requests that Plaintiff be awarded a maximum of $178,300.14. ECF 132 at 14.

Separately, Defendant moves to set aside the jury's verdict on the disability discrimination, failure to accommodate, and disability retaliation claims under Fed. R. Civ. P. 50, arguing that there was not enough evidence at trial for a reasonable jury to conclude that Plaintiff was a qualified individual. ECF 135 at 6. Alternatively, Defendant moves for a new trial under Fed. R. Civ. P. 59. *Id.* at 6, 28–29.

**DISCUSSION**

As an initial matter, this Court is not persuaded by Defendant's argument that Plaintiff's requests for costs and attorney's fees are limited to those authorized by O.R.S. 659A.885 and O.R.S. 20.107. *See* ECF 132 at 3–4; ECF 134 at 2. Plaintiff's prayer for relief requested, generally, "[r]easonable costs and attorney['s] fees, *including* as authorized by ORS 659A.885 and ORS 20.107." ECF 1 at ¶ 70(c) (emphasis added). This Court does not read Plaintiff's complaint to seek attorney's fees only on the state law claims. In any event, Defendant waived any objection by failing to object to Plaintiff's trial memorandum seeking "to recover prevailing party attorney['s] fees and costs if she prevails on *any* of her statutory claims." ECF 56 at 13 (emphasis added).

PAGE 2 – OPINION AND ORDER

**A. Bill of Costs**

Under 28 U.S.C. § 1920, the court "may tax as costs" certain expenses when a party timely files a bill of costs. This statute enumerates a limited set of recoverable expenses absent express authority under another provision. *Bunker Holdings Ltd. v. Yang Ming Liberia Corp.*, 906 F.3d 843, 847 (9th Cir. 2018). The prevailing party is presumptively allowed to recover for these expenses. *See* Fed. R. Civ. P. 54(d)(1). Even so, the district court retains discretion in allowing or denying an award of costs. *Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013). If the court grants the request, it may tax costs without specifying its reasons. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). But if the court denies a request to tax costs, it must provide reasons for doing so. *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591–92 (9th Cir. 2000) (en banc).

Plaintiff requests an award of costs for the filing fee ($400), medical records ($49), court reporting ($1,087.50), transcription ($7,044.30), process service ($439.38), witness fees ($80), and investigation ($1,392.50). ECF 121 at 2. Defendant argues that this Court should only award costs for the filing fee, process service, and witness fees because Plaintiff "states the amount of her costs without any explanation or argument as to why these should be awarded to her." ECF 134 at 4.

The costs statute allows taxing of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The court has discretion in determining whether transcripts were "necessarily obtained." *See Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 224 (9th Cir. 1964) (holding that taxing of expenses to purchase trial transcripts was not abuse of discretion). More recently, however, the Ninth Circuit has cautioned against an expansive view of what is "necessarily obtained." *See Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 959 (9th Cir. 2013). "The 'necessarily obtained for use in the case' standard does not allow a prevailing party to recover costs for materials that 'merely added to the

PAGE 3 – OPINION AND ORDER

convenience of counsel' or the district court." *Id.* (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009)).

Even after Defendant objected to the Bill of Costs, ECF 134, Plaintiff failed to explain why certain costs were necessary. Other than a statement that "[o]rdering transcripts of these depositions [of Defendant's employees] was reasonable and necessary to bring this case to a jury," ECF 141 at 8, Plaintiff has not explained how any of the transcripts were reasonably necessary to prevail in this action. Indeed, Plaintiff does not address the court reporting expenses at all. Plaintiff provides the invoices for these services, ECF 142-2, but the invoices do not explain the need for the transcripts. Plaintiff's request to award transcriptions and court reporting costs totaling $8,131.80 is denied.

This Court finds that the other items requested in the cost bill—the fee for filing the Complaint ($400), the process fee ($439.38), the witness fees ($80), the fee for medical records ($49), and the investigative services fee ($1,392.50)—are reasonable. This court acknowledges that, with respect to the investigative services fee, Plaintiff's reply brief provides little information. *See* ECF 141 at 8 ("Plaintiff used investigation services performed by private investigator Mike Snyder. A copy of his professional services throughout the case demonstrates various tasks performed, including locating Defendant for service of the lawsuit."). However, unlike the transcription invoices, which do not explain why the transcripts were necessary to prevail in the lawsuit, the investigative services invoices provide itemized descriptions of the services rendered and how they related to the lawsuit. *See* ECF 142-1. Plaintiff is therefore awarded costs in the amount of $2,310.88.

**B. Motion for Attorney's Fees**

Plaintiff moves for an award of attorney's fees of $547,303.75 ($312,745.00 in fees and a 1.75 multiplier); expert witness fees of $5,937.50; as well as the costs assessed above. ECF 119 at 1–2. Plaintiff also seeks post-judgment interest on the full award amount. *Id*. Defendant opposes the multiplier; suggests specific reductions bringing the fee amount to $297,166.90; and requests a

further reduction of 40 percent because of Plaintiff's limited success, ultimately yielding an award of $178,300.14. ECF 132 at 3.

1. **No multiplier is warranted in this case**

After calculating the lodestar figure by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, a court "must decide whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Plaintiff argues that an enhancement is warranted based on the risk assumed in contingency fee cases, the difficulty of the legal questions presented and skill required, and the amount involved and the results obtained. ECF 120 at 10–11.

"[A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Thus, this court declines to apply an enhancement on the basis that a contingency fee arrangement was used in this case. Nor does this Court find that this case presented particularly difficult legal questions. Plaintiff's claims were straightforward discrimination, retaliation, and protected leave violation claims. Although presenting these claims to a jury required a careful parsing of the facts at issue, the legal issues themselves were not complex enough to warrant an enhancement from the lodestar. Plaintiff argues that it "required skills and experience in both employment law and trial practice" to "establish disability discrimination where there are performance issues caused by symptoms of a disability and the complex interaction between employee's rights under the ADA and FMLA." ECF 120 at 10–11. But "the novelty and complexity of a case generally may not be used as a ground for [adjusting the lodestar] because they are already included in the lodestar calculation itself, being fully reflected in the number of billable hours recorded by counsel." *Atwood v. PCC Structurals*, No. 3:14-cv-00021-HZ, 2016 WL 2944757, at *8 (D. Or. Apr. 1, 2016) (internal quotation marks omitted) (*quoting Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 553 (2010)). Because Plaintiff does not provide

PAGE 5 – OPINION AND ORDER

specific reasons why the complexity of this case is not reflected in the number of hours billed, this Court declines to adjust the lodestar based on complexity or difficulty. Finally, the $237,000 verdict—although clearly a significant victory for Plaintiff and significantly more than the highest settlement amount—does not warrant an upward departure. Both the Supreme Court and the Ninth Circuit have cautioned "that the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee and that this factor normally should not provide an independent basis for increasing the fee award." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 900 (1984)) (internal quotation marks omitted). Plaintiff has not provided salient reasons why the results obtained warrant an upward deviation, other than arguing, circularly, that *if* the multiplied attorney's fees are awarded then Plaintiff *will have obtained* nearly five times Defendant's highest settlement offer. ECF 120 at 11.

**2. Specific billing objections**

This Court agrees with some, but not all, of Defendant's specific billing objections. This Court will not reduce the hourly rates for attorneys Sarah Osborne and Christina Stevenson. In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). This Court finds that the hourly rates requested are reasonable given each attorney's experience in legal practice. *See* Oregon State Bar 2017 Economic Survey, at 38–40 (calculating median hourly rates for Portland attorneys as $235 for 0–3 years and $300 for 10–12 years); *see also* ECF 141 at 6 (noting that reliance on the 2017 survey does not account for inflation). For Ms. Stephenson in particular, Plaintiff has provided evidence in the form of declarations that she is a well-regarded plaintiff-side employment lawyer with expertise not only in litigation but in the reviewing and drafting of employment laws. ECF 127, Angeli Decl., at 8.

PAGE 6 – OPINION AND ORDER

This Court agrees with Defendant that Plaintiff cannot recover for attorney Michael Owens serving documents. ECF 133, Hill Decl., at 2. Plaintiff concedes that it is improper to charge Mr. Owens's attorney rate for these admittedly clerical tasks and suggests billing them at a paralegal rate of $70 per hour. This Court agrees, and reduces these entries from $450 to $63, representing .9 hours at the stated paralegal rate.

This Court also agrees that Plaintiff cannot recover based on the time entries for intra-office meetings. "Given [the attorneys'] substantial experience and [Plaintiff's] failure to provide a persuasive justification for the intra-office meetings," there is a substantial risk that these conferences represent "unnecessary and duplicative" work. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007). Plaintiff has attested to the skill and expertise of the attorneys involved in this case and has not provided persuasive justification for intra-office meetings. Accordingly, this Court denies the request for an attorney's fee award based on these entries and reduces the award amount by $10,412.50. *See* ECF 133 at 2–8.

Finally, this Court strikes the entries with no description or vague, generic descriptions (*e.g.*, "attention to filing"; "prepare strategy"), totaling $2,979.00. In reply, Plaintiff notes that "[Attorney] Meyer, for example, frequently prepares strategy for his cases by thinking through valuation of the claims, opportunities to make demands for settlement, arguments to make in response to motions, or brainstorming discovery needed." ECF 141 at 9. This type of work is, no doubt, essential to lawyers as they prepare their cases. But this Court cannot assess the reasonableness of a given entry based only on the knowledge that lawyers, even the specific lawyers in this case, think about and brainstorm their cases.

Therefore, this Court reduces the requested attorney's fees from $312,745.00 to $298,966.50.

**3. No further reduction is warranted based on the degree of Plaintiff's success**

This Court declines to further reduce Plaintiff's attorney's fee award. Defendant argues that "Plaintiff obtained limited success because she only prevailed upon four of the ten claims she

PAGE 7 – OPINION AND ORDER

alleged" and did not obtain as much monetary relief as she plead in her complaint. ECF 132 at 5. It is true that Plaintiff originally pled $250,000 in economic damages and $300,000 in noneconomic damages, ECF 1 at 15, and recovered $87,000 in economic damages (35 percent) and $150,000 in noneconomic damages (50 percent), ECF 90 at 4.But Plaintiff's counsel also made settlement attempts before and after initiating litigation which were ignored. ECF 122, Meyer Decl., ¶ 22. Plaintiff was also willing to settle the case for $260,000 at a settlement conference, $240,000 after the conference, and $125,000 after this Court's summary judgment decision. *Id*. at ¶¶ 26–29. Defendant's highest offer was $94,000 ($85,000 plus forgiveness of a $8,000–9,000 debt). *Id*. Although Plaintiff's success may be called limited in comparison to her pleaded damages, it was not limited in comparison to her or Defendant's settlement offers.

Even if this Court were to conclude that Plaintiff's success was limited, a "district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *Hensley v. Eckerhart*, 462 U.S. 424, 436–37 (1933). Here, Plaintiff eliminated $53,255 worth of hours attributable solely to her unsuccessful claim. ECF 140, Osborn Decl., at 2. That, coupled with the reductions this Court imposed above, sufficiently accounts for any limitations on Plaintiff's success.

### 4. Plaintiff is not entitled to expert witness fees

Defendant challenges Plaintiff's request for expert witness fees because Plaintiff allegedly did not plead for attorney's fees and costs under the ADA and that the Oregon law that Plaintiff relies on does not authorize these expert fees. As noted above, this Court finds that Plaintiff did plead for fees and costs under federal law.

Under the ADA, a district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses." 42 U.S.C. 12205. But courts in this district routinely exercise their discretion to determine when an expert witness fee is reasonable. *See Atwood v. PCC Structurals*, No. 3:14-cv-00021-HZ, 2016 WL 2944757, at *10 (D. Or. Apr. 1, 2016)

PAGE 8 – OPINION AND ORDER

(collecting cases). In one of these cases, *Doby v. Sister of St. Mary of Oregon Ministries Corp.*, No. 3:13-cv-00977-ST, 2015 WL 4877786, at *7–8 (D. Or. Aug. 14, 2015), the court applies a standard from the Northern District of California that "[i]n order for the district court to allow such expenses, the court must find that the expert testimony submitted was 'crucial or indispensable' to the litigation at hand."

Plaintiff seeks to recover $4,037.50 in fees for Paul Torelli, Ph.D.'s expert on Plaintiff's tax offset and $1,900.00 in fees for Aaron Baker's expert opinion on Plaintiff's fee petition. ECF 120 at 11. This Court finds that neither opinion was 'crucial or indispensable' to Plaintiff's litigation. Plaintiff had already achieved a favorable jury verdict before either opinion was used. And, with respect to Mr. Baker's opinion, his declaration was one of eight in support of the fee petition and therefore cannot be fairly characterized as necessary.

### 5. Defendant does not object to post-judgment interest

Plaintiff also moves for postjudgment interest under 28 U.S.C. § 1961. ECF 119 at 1–2. Plaintiff seeks postjudgment interest at a rate of 2.34% on the full award amount of $261,191. Defendant does not object to Plaintiff's request for postjudgment interest. *See generally* ECF 132; ECF 133. Accordingly, this Court grants Plaintiff's request for postjudgment interest at 2.34%.

## C. Motion for Judgment Notwithstanding the Verdict

Defendant moved for judgment notwithstanding the verdict under Fed. R. Civ. P. 50 on Plaintiff's jury-tried claims for disability discrimination under O.R.S. 659A.112, failure to accommodate under O.R.S. 659A.112, disability retaliation under O.R.S. 659A.109, and disability discrimination under 43 U.S.C. § 12111, *et seq*. ECF 135 at 6. Defendant argues that there was not enough evidence to show that Plaintiff was a qualified individual and, as a result, no reasonable juror could find that she satisfied her burden on these claims. *Id*.

PAGE 9 – OPINION AND ORDER

Judgment as a matter of law is appropriate "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 510 (9th Cir. 2004) (internal citation omitted). When evaluating such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Defendants cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that they did not raise in their pre-verdict Rule 50(a) motion. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

Defendant argued in its initial motion for directed verdict that Plaintiff was not a qualified individual. *See* ECF 111, Trial Trans. Feb. 24, 2022, at 207 ("[S]he's not a qualified individual, and so this claim can't move forward from that."). As this Court noted in denying that motion, it was a jury question whether Plaintiff was a qualified individual who could perform the essential tasks of her job with or without accommodation. *Id.* at 224. Defendant argues that because it granted Plaintiff an accommodation—intermittent leave for therapy and rest—and she was still unable to perform the essential functions of her job, she was not a qualified individual. ECF 135 at 14. But that was not the question. The question was whether the *additional* requested accommodation of extra time off to complete her mental health treatment would have enabled Plaintiff to perform the essential functions. On this point, the jury could consider Plaintiff's testimony that she felt that she would have been able to return, her doctor's note clearing her to return after the additional leave,[1] Daniel Maher's

---

[1] Defendant argues that "Dr. Gray *notes* on the form that Plaintiff would be 'released with restrictions'" on February 21, 2020, but, because no restrictions were listed, it was impossible to determine whether those restrictions could be accommodated. ECF 135 at 19 (emphasis added). This Court disagrees with Defendant's characterization of the form and the meaning of Dr. Gray's contributions. The form was provided to Dr. Gray by Defendant and the language about restrictions was part of the pre-printed language. The form begins by asking whether the employee "is" able to perform the essential functions of the job. If the doctor checks yes, the next prompt reads: "If yes, the employee is fully released to work on [date]." ECF 136-6, Exhibit

PAGE 10 – OPINION AND ORDER

testimony that she had improved during outpatient therapy, and Plaintiff's husband's testimony that her mental health was improving. The jury also could consider Lucy Andersen's response to the question that, before Plaintiff's mental health deteriorated, "she was qualified for the position":

> A. She was five months in and still learning all of her pieces to her job. She was progressing well, and I was encouraging—because she was very positive and eager to learn, and so I wanted to encourage that; so, yes.
> Q. And there weren't—as far as—there's no performance issues that you failed to raise in this performance review that you—correct?
> A. No, there were—there were none.

> ECF 111, Trial Trans. Feb. 24, 2022, at 13–14.

Unsurprisingly, Defendant disagrees with the jury's conclusion that Plaintiff was a qualified individual. But this Court sees no basis to overturn the jury's verdict. There was competent evidence upon which a reasonable jury could find that Plaintiff could perform the essential functions of her job, as she had in the past, if Defendant had granted the accommodation she sought.

Defendant also challenges the disability verdicts. Defendant argues that there was insufficient evidence for the jury to find that Defendant subjected Plaintiff to higher scrutiny, revoked her ability to telecommute, or placed her on a work development plan ("WDP") because of her disability. But there were multiple theories on which Plaintiff alleged disability discrimination. This Court found when Defendant moved for directed verdict, and reaffirms now, that it was a jury question whether Defendant terminated Plaintiff's employment because of her disability. This Court previously noted

---

6 (Trial Exhibit 517). But if the doctor checks no, the prompt reads: "If no, the employee is *released with restrictions* to return to work on [date]." *Id*. (emphasis added). Dr. Gray checked no and filled in a return-to-work date of February 21, 2020, but she did not note any restrictions that would remain in place after February 21, 2020. Rather, the next prompt instructed Dr. Gray to "list any function that the employee is unable to perform *until* 2/21/20." *Id*. (emphasis added; date filled in by Dr. Gray). There, Dr. Gray noted an inability to interact with colleagues, concentrate, or focus on work. *Id*. Dr. Gray had the option to check a box indicating that those inabilities were permanent, but did not do so. *Id*. Naturally read, Dr. Gray's responses on the form meant that Plaintiff was unable to perform the essential functions of her job at the time the form was filled out but that she would have been able to perform them when she was cleared to return.

PAGE 11 – OPINION AND ORDER

that the same employees who testified that they did not consider Plaintiff's taking leave as a negative factor in the termination decision did testify "that they considered Plaintiff's work mistakes—allegedly a byproduct of her mental health disability—and her request for a leave extension in January and February 2020—a potential ADA accommodation—in their termination decision." ECF 114 at 17. This Court also noted in the context of Plaintiff's leave act claims that "a holistic review of the WDP shows that it was Plaintiff's mistakes and communication issues, rather than the absences themselves, that prompted the WDP." *Id*. at 8. Plaintiff's theory of the case was that her mistakes and communication issues were byproducts of her disability; even if the jury was unconvinced that Plaintiff's absences were the but-for cause of the WDP, it could still find that her disability was the but-for cause.

A reasonable jury could have found—and in this case did find—in Plaintiff's favor on the disability claims based on competent evidence presented at trial. Accordingly, Defendant' motion for judgment notwithstanding the verdict is DENIED.

Defendant alternatively moves for a new trial under Fed. R. Civ. P. because verdict was against the weight of the evidence. ECF 135 at 28; *see Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (*quoting Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). Defendant relies on the same arguments it made in support of the motion for judgment notwithstanding the verdict. This Court finds that the verdict was not against the weight of the evidence. Ultimately, the issues in the disability claims came down to which witnesses the jury credited, especially in considering Defendant's employees' motivations. This weighing of credibility is squarely a jury function. Accordingly, the motion for new trial is DENIED.

## CONCLUSION

Plaintiff's Motion for Attorney's Fees, Costs, and Postjudgment Interest, ECF 119, and Bill of Costs, ECF 131, are GRANTED IN PART and DENIED IN PART. Defendant's Motion for Judgment Notwithstanding the Verdict, ECF 135, is DENIED.

PAGE 12 – OPINION AND ORDER

Plaintiff is awarded attorney's fees of $298,966.50. Plaintiff is awarded costs in the amount of $2,310.88. Plaintiff is also entitled to postjudgment interest on the award of $261,191 at the rate of 2.34% per year.

**IT IS SO ORDERED.**

DATED this 31st day of August, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
